*Litchfield,*
June, 1836.

Andruss
*v.*
Doolittle.

In this opinion the other Judges concurred.

New trial not to be granted.

---

ANDRUSS, administrator of MOORE, *against* DOOLITTLE.

| | |
|---|---|
| 11 | 283 |
| 63 | 354 |
| 11 | 283 |
| 67 | 455 |
| 11 | 283 |
| 75 | 662 |

It is the duty of an administrator to inventory property fraudulently conveyed by the intestate; and he is entitled to the custody of such property, especially if the estate is insolvent, and it is needed for the payment of debts; and he may recover it out of the hands of the fraudulent grantee.

In a suit by the administrator against the fraudulent grantee for such property, the insolvency of the estate and the consequent deficiency of assets, may be proved, by other evidence than the orders and decrees of the court of probate; this being a proper question to be tried by a court and jury.

To sustain such action, it is not indispensably necessary, that the administrator, when he made demand of the property, should have given notice, that there were debts, for the payment of which it was needed.

Where the defendant, in such action, claimed, that a debt allowed by the commissioners against the estate, arose upon a note, given by the intestate, as surety for *C;* that *C* was able to pay the debt; and that his implied promise to indemnify the surety, was a claim which the administrator was bound to inventory, and which the jury ought to take into consideration in deciding the question whether the property sought to be recovered was needed for the payment of debts; after a verdict for the plaintiff, it was held, 1. that such claim against *C* was not assets until the debt was paid; 2. that as the insolvency of the estate was founded in part upon the intestate's liability for *C,* the jury had passed upon this subject.

So where the defendant, in such action, claimed, that a certain sum, which he had agreed, in consideration of the fraudulent conveyance, to pay to each of the five daughters of the intestate, should be considered, by the jury, as assets in the hands of the administrator; after verdict for the plaintiff, it was held, that the jury having found the whole contract fraudulent and void, the administrator could establish no claim founded upon the consideration.

THIS was an action of trover for certain articles of personal property.

The cause was tried at *Litchfield, August* term, 1835, before *Waite,* J.

*William Moore* was, on the 18th of *June*, 1832, the owner of the property specified in the declaration. He died on the 4th of *June*, 1833 ; and the plaintiff was appointed administrator upon his estate. The defendant, who had married a daughter of the deceased, claimed, that these articles, with other property, were *bona fide* conveyed to him, on the 18th of *June*, 1832, by the deceased ; and that he, the defendant, in consideration thereof, agreed by parol, to support the deceased and his wife, during their natural lives, and to pay to each of their five daughters, ten years thereafter, 100 dollars. The plaintiff claimed, that such conveyance was fraudulent and void ; because this was all the estate of the deceased, and he, at the time of making the conveyance, was indebted to certain individuals, as surety for a man who had failed, in a greater sum than 5000 dollars, and was also liable as surety upon a note signed by him and *George H. Clark*, payable to *Arah Phelps*, in the sum of 450 dollars ; that the estate of the deceased was largely insolvent, and the whole of the property demanded in the declaration was needed to pay his just debts.

It was proved, that a debt of 456 dollars, allowed to *Arah Phelps*, in the commissioners' report, arose upon a joint and several note, made on the 5th of *March*, 1830, by the deceased and *George H. Clark* ; and it was claimed by the defendant, that the deceased was a mere surety ; and that *Clark* was of sufficient ability to pay the debt. The plaintiff offered evidence to prove, that *Clark* was insolvent and unable to pay it.

It was also proved, that part of the personal estate in the inventory had been set out to the widow ; part had been sold by the plaintiff ; and part was in the defendant's hands, the subject of this suit. It was not proved, that the plaintiff had attempted to enforce the collection of all the notes in favour of the estate, and embraced in the inventory.

The defendant claimed and prayed the judge to instruct the jury, that the insolvency of the estate could be proved only by the orders and decrees of the court of probate ; also, that the money to be paid the daughters of the deceased, and the implied obligation of *Clark* to repay the money on his note, ought to be considered as assets in the hands of the administrator ; and that, at all events, the plaintiff could not recover, without shewing, that when he made demand for this property, he sta-

ted it was wanted to pay debts, and the amount which was needed for that purpose.

The judge instructed the jury, that if the property in question had been fraudulently conveyed to the defendant, with a view to shield it from the claims of *Moore's* creditors; that the estate was insolvent; that before the commencement of this suit, the plaintiff demanded said property of the defendant, who refused to deliver it, and retained it; the plaintiff was entitled to recover so much of such property as should be necessary for the payment of the debts of the intestate.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial.

*L. Church* and *T. Smith,* in support of the motion, contended, 1. That the administrator had no right, (even if the conveyance was fraudulent,) to the custody of the property, until it was known, by the proceedings of the court of probate, that it was needed to pay debts. He cannot do any thing with it, until the amount of the debts and charges are ascertained, and also the avails of all other property, so that it may judicially appear, that there is a deficiency of assets. He should inventory the estate held by a fraudulent or voluntary grantee according to the fact; and then the court of probate will not direct it to be sold until all the other resources of the estate are exhausted. In no other way can the rights of the party claiming under the fraudulent conveyance be protected, and the highly salutary and important rule carried into effect, that such a conveyance shall be good between the parties.

2. That if the administrator had a right to take the property into his possession, before the result of a settlement of the estate in the court of probate, on the ground that there might possibly be a deficiency of assets, he is bound to give notice, at the time he makes the demand, that there are creditors, and that the property is needed to pay them. There is no presumption that there are creditors. The administrator is bound to ascertain their existence. The subject is peculiarly within his knowledge; and notice is necessary, on general principles.

3. That there was not any competent evidence to shew, that the property was needed to pay debts: it could only be proved, by the records of the court of probate. In the first place, the proof admitted was wholly unnecessary, as the administrator

might have disposed of all the other property long before the trial; and by comparing the avails with the amount of the debts, the condition of the estate would have been ascertained. Secondly, it is impracticable to investigate the subject in a trial before the court and jury. The administrator should account for the estate under oath; and all parties in interest have a right to be heard. The defendant can have no notice of the matters to be litigated, and is in great danger of being subjected unjustly. Thirdly, the process is also equally perilous to creditors; for the jury may acquit the defendant, on the ground that the other estate is adequate, and yet it may turn out to be totally insufficient. Fourthly, what is to be done with the damages, in case they are not needed to pay debts? Fifthly, the enquiry is in direct opposition to the settled principle, that "the court of probate alone can adjust the account of an administrator, and, on such adjustment, make to him all just and proper allowances." *Bacon* v. *Fairman,* 6 *Conn. Rep.* 121. 128. *Pitkin* & al. v. *Pitkin* & al. 7 *Conn. Rep.* 315. *Pitkin* v. *Pitkin* & al. 7 *Conn. Rep.* 307. *Bailey* v. *Strong,* 8 *Conn. Rep.* 278. *Beach* v. *Norton,* 9 *Conn. Rep.* 182.

4. That the court should have instructed the jury, that the implied promise that *Clark* should indemnify the deceased for being surety to *Phelps,* as also the promise of the defendant to pay 100 dollars to each of the children of the deceased, should have been inventoried as part of the assets of the deceased, and should be taken into consideration in determining the question whether the property in dispute was wanted to pay debts.

*W. W. Ellsworth* and *Holabird,* contra, after remarking, that it appears from the record, as admitted, or found by the jury under the charge of the court, that the plaintiff is administrator; that the estate is insolvent; that the property or money recovered is needed for the payment of debts; and that the defendant is a fraudulent grantee, having entered into a combination to defraud these creditors; contended, 1. That the insolvency of the estate was ascertained in the proper way. A court of law with a jury, is the proper tribunal to try this question. The judge of probate makes no decree upon it. If the estate is represented insolvent, he finds nothing, but, after notice, appoints commissioners to ascertain the debts against the estate. The commissioners return the debts found. The judge then sets out

property to the widow, and issues an order of sale. The money realized is then divided. When the judge comes to settle the administration account with *his agent,* the administrator, he finds the condition of the estate ; but never does he declare, decree or order the estate to be insolvent. The doings of the court of probate are only for the purpose of settling with the administrator ; and the fact of insolvency, so far as this defendant is concerned, can only be proved, in any court where the question arises, by the usual evidence.

2. That it is the duty of the administrator to reclaim property fraudulently conveyed. Is he to wait for the settlement of his administration account, (perhaps eighteen months hence,) before he can take possession of property fraudulently conveyed? What will become of it, in the meantime? He cannot now know, exactly, how much he shall want ; but he has recovered only what he now needs ; and this he is entitled to hold.

3. That it was not necessary for the plaintiff to make any other demand than that which was made, nor to give notice that the property demanded was required for the payment of debts ; and still less necessary was it to specify the amount in value required for that purpose.

4. That it was not necessary or proper for the plaintiff to inventory *Clark's* liability to indemnify the estate, nor the promise of the defendant, to pay the legacies to the daughters. These are not assets. *Clark* was never indebted to the estate, as the intestate had paid nothing for him : and if the conveyance to the defendant was fraudulent and void, as the jury have found it, the promise which led to it, or resulted from it, is also void.

WILLIAMS, Ch. J. The defendant claims, that the plaintiff had no right to the custody of the property in question, until it was ascertained, that it was needed to pay debts. It has been decided, by this court, that it is the duty of the administrator to inventory property of this description. *Minor* v. *Mead,* 3 *Conn. Rep.* 289. *Booth* v. *Patrick,* 8 *Conn. Rep.* 106. And as the executor is to inventory only the estate of the deceased, it would seem to follow, that he ought to have the custody of that for which he must be responsible. It is said, the administrator may waste it. He, on the other hand, may say, that the fraudulent grantee may secrete or destroy it. And it would seem as if an officer of the law was most worthy of confidence ;

and if the fact is ascertained, that the property is wanted for the payment of debts, then it is all important, that it should be within the controul of him whose duty it is to pay them.

This brings us to the next question in this case, how is this insolvency to be proved? The defendant claims it can be done only by the orders and decrees of the court of probate; that this is the tribunal constituted for this purpose; and that it would be almost impracticable to try this question by a jury. While this court are not desirous of embarrassing themselves, or a jury, with questions cognizable only by the court of probate, they are not willing to establish a technical rule, by which a sure defence would be provided for the fraudulent grantee of a deceased person; and such, it is apprehended, would be the effect of adopting the principle claimed by the defendant. The administrator must inventory these articles, so fraudulently conveyed. Suppose they amount to more than the debts; how can the court of probate determine this estate to be insolvent? That court cannot do it. Of course, as the estate appears solvent at the probate office, the fraudulent grantee may cover himself, by this shield; and as the court of probate can make no order, which will reach him, he may safely retain the property. The fact is, the court of probate can never determine the insolvency of the estate, until the property is sold, and the administration account settled; and if this defendant, or persons in his situation, can prevent a sale of the property, in this way, then the estate can never be settled; and as the court of probate cannot decree its insolvency, he may always retain the property. From the necessity of the case, therefore, this question must be tried before the courts of common law.

It was also claimed, that if the plaintiff had a right to the property, when he made his demand, he was bound to give notice, that there were creditors, and that the property was needed to pay them. In support of this position, no authority is cited; and we do not see any foundation for the claim. If the defendant has good title to this property, as against creditors, he must eventually hold it; if he has not, it is not easy to see why he should not surrender it to him who is the representative of the creditors, and who cannot finally hold it, if it is not necessary for them. If the intestate were alive, the creditors would seize this property as his, and leave the defendant to make out his title, by a suit. He certainly is placed in no

worse situation, by this course, and can have no reason to complain.

Another objection was made, that the court did not instruct the jury, that the implied promise of *Clark* to indemnify *Moore* as his surety, and the defendant's promise to pay 100 dollars to each of his daughters, should have been inventoried and taken into consideration, in deciding the question whether this property was wanted to pay debts. As it respects the claim on *Clark*, the administrator had nothing to inventory until the debt was paid. *Brentnal* v. *Holmes*, 1 *Root* 291. But the whole question relative to this subject was fairly before the jury, when they were considering the insolvency of *Moore*. That insolvency was founded, in part, upon his liability for *Clark ;* and if *Clark* was able to pay the debt himself, that fact would have its proper weight, when they were considering whether he was insolvent.

As to the sums payable to the daughters. If this contract made between the defendant and the intestate was fraudulent as against creditors ; and the administrator was attempting to vacate it, on that account ; it surely would be extraordinary to call upon him first to treat that contract as a valid one, and claim under it, while he is claiming that it is a nullity ; and more extraordinary would it be, if after the jury had found that contract fraudulent and void, we should set aside that verdict, because the court had not directed the jury to treat it as valid, so far as to make the plaintiff accountable, in some measure, for the consideration of that contract.

Upon the whole, we are satisfied, that none of the objections made by the defendant, ought to prevail ; and no new trial ought to be granted.

The other Judges concurred in this opinion.

New trial not to be granted.