HENRY F. HALL, EXECUTOR, *vs.* LUCY M. PIERSON.

New Haven & Fairfield Cos., June T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

The statutory requisites to a right on the part of a widow to an assignment of dower are stated in Gen. Statutes, §§ 618, 621, 622. The question whether the applicant possesses these requisites belongs to the exclusive jurisdiction of probate courts, subject to a right of appeal to the Superior Court.

If, notwithstanding the existence of the statutory requisites, there are other grounds upon which the right of dower should be equitably held not to have attached, and those grounds appear, the probate court may and properly should refuse to set out dower. It ought not however to do so in a fairly doubtful case, since it would cast upon the applicant the necessity of appealing as her only practicable remedy.

Hall *v.* Pierson.

If the probate court in such a case should refuse to set out dower and on an appeal the case should be decided by the appellate court on the facts, the decision should conclude all parties on any questions made or that might have been made in the case.

But where the probate court in such a case sets out dower, its decree and the assignment of dower constitute no estoppel, to a party having a sufficient interest and claiming to be aggrieved, from seeking relief in a court of equity; such a decree, unappealed from, being conclusive as to the possession by the applicant of the statutory requisites.

It is no objection to the probate court having jurisdiction over those matters that would in equity bar the right of dower, that it will thus have concurrent jurisdiction at that point with the Superior Court.

Where however the legal right to dower has attached and it becomes inequitable for the widow to take the dower by reason of after-arising facts, the court of probate cannot consider those facts, but must leave the parties interested against the assignment of dower to their remedy in a court of equity.

The executor of *H* brought a suit for an injunction against an application of his widow for dower, and alleged in his complaint that it would be " necessary to sell all or a large portion of the real estate to pay the debts and the expenses of settlement," and that the acts of the defendant in claiming dower " clouded the title and made it impossible to sell the real estate for a fair valuation." Held to be a sufficient averment of title in the plaintiff to enable him to maintain the suit.

The insolvency of an estate and the consequent deficiency of assets may be shown in such a case by other evidence than the decree of the probate court.

After a demurrer to a complaint had been sustained a third person applied to be made co-plaintiff. Held to be a matter within the discretion of the judge, and that the application was properly denied.

[Argued June 13th—decided September 9th, 1893.]

SUIT for an injunction against proceedings by the defendant to obtain an assignment of dower by a probate court in the real estate of Seymour D. Hall, of whose will the plaintiff was executor; brought to the Superior Court in New Haven County. The defendant demurred to the complaint, and the court (*G. W. Wheeler, J.,*) sustained the demurrer and rendered judgment for the defendant. The plaintiff appealed. The case is fully stated in the opinion.

*H. G. Newton* and *H. F. Hall,* for the appellant.

*W. L. Bennett,* with whom was *T. E. Doolittle,* for the appellee.

FENN, ·J.   The original complaint in this action alleged, in substance, that the defendant was the former wife of Seymour D. Hall, the plaintiff's testator, and was divorced from him on her complaint; that afterwards, in the lifetime of the testator, she accepted a note for $550, signed by the plaintiff personally; and in consideration thereof made a contract with the testator, for the benefit of his estate, in writing but not under seal or acknowledged, by which she granted, quit-claimed and released all right of dower and one third interest, which she might have had thereafter, in or to the real property of the testator, so that she should not thereafter have any claim on his property; that after the death of the testator she demanded and received payment of the note, and was then requested by the plaintiff to execute and deliver to him, as executor of the testator's estate, a deed releasing the estate from any claim on her part for dower, but that she refused to do so, and claimed the right of dower in the real estate belonging to the estate, and that she presented to the court of probate for the district of Wallingford, in which district the estate of the testator was and still is in process of settlement, a petition to have dower assigned to her; and notwithstanding the opposition of the plaintiff, the court of probate passed an order for the assignment of dower, as prayed for in said petition, and for the appointment of distributors to set out dower to her in the real estate of the deceased, which is described.   It was further alleged that "it will be necessary to sell all or a large portion of said real estate in order to pay the debts of said Seymour D. Hall and the expenses of settlement." It was also alleged that such acts constituted a cloud upon the title of the real estate ; made it difficult or impossible to sell the same at a fair valuation; decreased its value to the estate, and caused loss, trouble and expense to the plaintiff, as executor, in defending the same; and that the defendant intended to make a sale and conveyance of her pretended right to a *bonâ fide* purchaser, and thus cause further trouble and expense.    And the plaintiff thereupon claimed an injunction against such conveyance, against further claim of title

to dower, and further action, suit or proceeding in any court to obtain the same ; also that the defendant be required to execute a release ; and that judgment be rendered that she has no right, title, interest, or claim of dower, and for pecuniary damages.

Upon this complaint a temporary injunction against a transfer or conveyance only was granted by the Superior Court, which continues in force.

To the above complaint the defendant demurred, assigning four reasons, three of which, the first, third and fourth, were sustained by the court, and are as follows :—

" 1. That it does not appear by said complaint that the plaintiff as executor of the last will of said Seymour D. Hall has any such interest in the property and right in question as to bring this suit."

" 3. That it appears by said complaint that the matters in said complaint set out have been decided adversely to the claim of the plaintiff by a court of competent jurisdiction.

" 4. That it appears by said complaint that said plaintiff was present, and had opportunity to present the matters in said complaint set out to the court of probate for the district of Wallingford as a defense and in opposition to the said petition of the defendant for assignment of dower, and that said court of probate, notwithstanding the opposition of the plaintiff, decided the issue in favor of the defendant, and assigned to her dower as prayed for in said petition."

After the judgment of the court sustaining the demurrer as above, an application was made to the court by Seymour D. Hall, of Wallingford, who, it was alleged, " brings this application by Henry F. Hall, his next friend," stating that he was the son of the testator, Seymour D. Hall, deceased, and the sole heir and sole legatee and devisee under his will, and asking to be joined as a co-plaintiff in the action with the executor. This application was denied by the court. Afterwards the plaintiff asked, and was refused, leave of the court to file an amendment to the complaint, alleging that the defendant, at the hearing in the court of probate, introduced no evidence, but claimed that the court of probate had

no jurisdiction to determine the validity of the writing executed by the defendant, and that the plaintiff must enforce his rights, growing out of said transaction, in some other jurisdiction if at all. The plaintiff, in his appeal from the adverse judgment of the court, assigns as error the various rulings aforesaid, adding—" and Seymour D. Hall of Wallingford, by Henry F. Hall, his next friend, joins in this appeal, and in the prayer for relief thereto, so far as relates to his application to be made a party plaintiff."

The question which is fundamental in this case is that raised by the third and fourth reasons of demurrer to the complaint, which were sustained by the court below. We will, therefore, first examine that question. The successful contention of the defendant in that court is stated by her counsel, in their brief filed in this court, in these words :— " The Superior Court has no jurisdiction. Jurisdiction over the matter is in the court of probate, and that court has taken jurisdiction and has acted." It is manifest that the question here presented is of much importance, since its determination may not only be decisive of the case before us, but a clear understanding of the doctrine of the cases cited by counsel in argument, and of other cases on the subject, in this state, will be of great and far-reaching practical utility. We therefore regard it as our duty to consider it fully.

It will be readily seen, we think, that questions which may arise concerning the right of an applicant (or if application is made by those interested in an estate, or the creditors of a widow, of the person to whom it is asked that dower may be set out) to such assignment by a court of probate, can be appropriately divided into three general classes. First, whether such applicant possesses the legal or statutory requisites to entitle her to such assignment. Second, whether, notwithstanding such strict statutory requisites may exist, there are other grounds or equities which bar or prevent the existence of a right of dower against the estate. And third, whether, although at the time of the decease of the person whose estate is in settlement a right of dower did exist, the applicant has subsequently parted with or estopped herself

from the assertion of such right. In reference to the first and last of these three classes of questions there can be, we think, but little difficulty in understanding the power, duty and jurisdiction of courts of probate. Such uncertainty as there may be pertains to the second class. All questions which may arise as to whether the applicant for the set-out of dower possesses the statutory requisites to entitle her to such assignment belong to the exclusive jurisdiction of courts of probate. Those requisites are now to be found stated in Gen. Statutes, §§ 618, 621, 622. To be entitled to dower the person must have been the wife of the decedent, married prior to April 20th, 1877, and living with her husband at the time of his death, or absent by his consent or by his default or by accident, or have been divorced without alimony, she being the innocent party, and a suitable provision must not have been made for her support before the marriage by way of jointure or a settlement of property the title to which shall not have failed wholly or in part, in her favor, in contemplation of marriage, to take effect after the death of the intended husband, and expressed to be in lieu of dower ; and she must not have, with her husband, during the marriage, entered, in the manner provided by statute, into a contract for the abandonment of common law rights in the property of each other. Nor must she, by failure to decline to accept, as prescribed by statute, a devise or bequest to her in lieu of dower, have become debarred of her rights. Whenever application is made to a court of probate to have dower assigned, the court, as was said in *Hewitt's Appeal*, 53 Conn., 36, should, before making such assignment, be " reasonably satisfied " that the applicant or person to whom it is asked that dower be assigned, " possesses the statutory requisites." The duty and jurisdiction of courts of probate in this regard are similar to that which such courts exercise in passing an order directing the estate of an intestate to be distributed to the persons found by them to be the heirs at law and entitled to the estate, and should therefore, until set aside on appeal, have the same conclusive effect. *Kellogg* v. *Johnson*, 38 Conn., 269. It is true, even as

applied to such a case, as was said in *Hewitt's Appeal*, (*supra*,) that "the assignment of dower does not establish the title of the applicant to dower in the lands assigned, any more than the setting off of lands on an execution establishes the title to the lands in the execution creditor. * * * All that is done in either case is simply to designate the lands in which dower exists in one case, if it exists at all, and to satisfy the debt in the other, if title by the levy is acquired, which depends upon the execution debtor being the owner of the lands set off. If the title in either case is disputed, further proceedings before another court would be necessary to determine it." It is again similar to a distribution, notwithstanding which the right of the distributee might be disputed in another court, either upon the ground that the intestate did not have title which he could transmit, or that after the devolution of title by his death the distributee had parted with it to another; questions which the probate order of distribution does not affect, and upon which that court has no jurisdiction to pass. *Gold's Case*, Kirby, 100; *Parsons* v. *Lyman*, 32 Conn., 566; *Homer's Appeal*, 35 id., 113; *Holcomb* v. *Sherwood*, 29 id., 418. So, not only if under the order of the court of probate dower is set to a widow in certain lands of her deceased husband, the question whether such lands were so the property and estate of the husband as to be subject to dower is unconcluded, but also the widow's title to dower is not settled. *Hewitt's Appeal*, p. 37.

What is conclusively settled by such order of a court of probate and the proceedings had thereon, and which, because within its jurisdiction, "cannot be attacked collaterally except for fraud, or set aside save by appeal," (Gen. Statutes, § 436,) is that the person to whom the assignment of dower is made possesses the statutory requisites to entitle her to such assignment. And such proceedings also designate the lands in which, as between her and "the persons entitled to the estate," such dower interest is to be held and enjoyed. To that extent the order of the court, and the doings of the persons appointed to set out dower, "returned to and ac-

cepted by said court," do "ascertain and establish such dower." Gen. Statutes, § 619.

It would seem to result from what has already been said, that if, at the time of the decease of the person whose estate was in settlement, a right of dower in such estate existed in favor of the applicant, which right was not lost in the manner expressly provided by Gen. Statutes, § 621, namely, by failure to decline to accept a devise or legacy made in lieu of dower, the court of probate would have no right or jurisdiction to consider the question whether she had subsequently parted with or estopped herself from claiming such right. That, indeed, is the precise point of *Hewitt's Appeal*, where the question arose as between the widow and the persons who had purchased the lands in which dower was· claimed, as free from the right of dower, from the guardian of the minor heirs, selling under the order of the court of probate ; and although it is stated in the opinion, (p. 34,) that "the question is, whether a court of probate in the settlement of an estate is vested with such equity powers that it can apply an estoppel in a controversy between the widow, on the one part, regarding her right of dower in her deceased husband's estate, and strangers to the estate on the other, having no interest whatever in it except as purchasers of land belonging to it," (such being, in reality, the scope of the question presented by the facts,) yet it must be manifest from the entire reasoning of the opinion, that the mere fact that the appellees' only interest was that of purchasers of land belonging to the estate was regarded as in no sense vital ; and that if the appellees in that case had been the minor heirs themselves, no conveyance having been made of their interest by their guardian and under an order of the court of probate to third persons, and the claim had been that the widow had released her interest to them, by which they would have acquired an independent, different and enlarged interest over that which they took by descent, the decision must have been the same. In that case it would have equally been an effort "to set aside, by the court of probate, Mrs. Hewitt's right to dower, which once

existed." (p. 36.) It would equally "grow out of a pur-
chase of her dower lands after dower had attached." (p. 37.)
And it would be equally correct to say, as the court does—
" Suppose she should claim that what purported to be a deed
was obtained from her by fraud or duress, or was executed
by mistake, in the belief that she was executing one instru-
ment when in fact she was executing another. Must a court
of probate determine all these questions before the lands can
be designated in which she has dower, if she has it at all?
If this be so the court of probate would be assuming the
right to determine her title to dower." It is unnecessary to
quote further. The whole opinion demonstrates what has
been stated. See also *Dickinson's Appeal*, 54 Conn., 224.
In *Mallory's Appeal*, 62 Conn., 218, to the claim that a cer-
tain writing between the heirs of an estate, who were also
indebted to it, bound such heirs, this court, quoting as au-
thority *Hewitt's Appeal* and other cases, said :—" Courts of
probate have no power to consider and act upon such mat-
ters. They can neither try titles to property, nor determine
questions of estoppel, and the Superior Court, sitting for the
trial of a case like this, takes the place of the court of pro-
bate from which it came, and can do no more than could
have been done by that court." See also *Holcomb* v. *Sher-
wood, (supra;)* *Greathead's Appeal*, 42 Conn., 374.

But a much more difficult question is presented by the
other class of questions, as to the jurisdiction and duty of
courts of probate, where it is claimed that the right of dower
is barred or prevented by other grounds than the want of
statutory requisites. The case of *Andrews* v. *Andrews*, 8
Conn., 79, was a bill in chancery brought by the heirs and
devisees of a decedent against his widow, for a release or an
extinguishment of her right of dower in his estate. It was
held that a certain agreement entered into between the par-
ties, husband and wife, before the marriage and ancillary
thereto, did not constitute a legal bar of dower, but was en-
titled to the aid of a court of chancery to carry it into ef-
fect, and the relief sought was accordingly decreed. In the
opinion of the court the case of *Selleck* v. *Selleck* is referred

to as bearing a strong resemblance in all its leading features and as decisive. That case had not previously been reported, but is given in a note to *Andrews* v. *Andrews*, pp. 85, 86. In that case there was, previous to the marriage, and in contemplation thereof, an agreement in writing entered into between the parties. The marriage took effect, and after the death of the husband, who died leaving valuable real estate, the wife, who survived, received the sum mentioned in the agreement within the time therein stipulated, and thereupon executed and gave to the executors a receipt acknowledging that she had received that sum in full satisfaction of dower in the estate of her late husband and of all claims and demands which she had or might have on the estate. The instrument was not under seal. She afterwards applied to the court of probate to have dower allotted. This application was sustained and dower was set out to her accordingly. On an appeal taken the decree of the court of probate was affirmed, on the ground that the provision made for the wife by the agreement did not constitute a legal jointure, and was not therefore at law a bar of dower, and that her dower, having vested, could be released only by deed. The heirs at law then preferred their bill in chancery, stating the facts and praying for relief, which was thereupon granted. This case is referred to with approval in *Hewitt's Appeal* and held " decisive." It would seem, on its face, to be so of the present question. But it cannot be doubted that decisions of this court, subsequent to *Selleck* v. *Selleck* and *Andrews* v. *Andrews*, have more clearly recognized and sustained the equity powers of courts of probate. *Beach* v. *Norton*, 9 Conn., 182 ; *Am. Bible Society* v. *Wetmore*, 17 id., 182 ; *Ashmead's Appeal*, 27 id., 241 ; *Mix's Appeal*, 35 id., 121 ; *Vail's Appeal*, 37 id., 185 ; *Hewitt's Appeal*, 53 id., 24 ; *Chase's Appeal*, 57 id., 236 ; *Potter's Appeal*, 56 id., 1. But in the citation of the above authorities generally upon the subject of the equitable powers of courts of probate, we will digress to say that a cautionary suggestion will not, in view of an apparently frequent misunderstanding, be inappropriate. The entire jurisdiction of such courts is statutory, special and

limited.   In the exercise of such statutory·jurisdiction they
possess "such incidental and implied powers, legal and equita-
ble, and such only, as are necessary to the entire performance
of all the duties imposed upon them by law."   *Potwine's Ap-.
peal,* 31 Conn., 381 ; *Hotchkiss* v. *Beach,* 10 id., 231.   Such
necessary incidental equitable powers, in reference to a cer-
tain class of questions, namely those arising concerning the
division of a fund, constituting the assets of an insolvent
estate, among the creditors whose claims have been allowed
by the commissioners on such estate, have, as the result of
a line of cases, including *Waterman's Appeal,* 26 Conn., 96,
*Ashmead's Appeal,* (*supra,*) and *Vail's Appeal,* (*supra,*) been
by this court, in *Chase's Appeal,* (*supra,*) distinctly declared
to be identical with those of a court of chancery of general
jurisdiction ; that " it can find and enforce an equitable es-
toppel in favor of one and against another creditor, as fully
as would the Superior Court upon a bill in equity for a like
purpose.   The principles and rules of law are the same in
each court."   It is added that therefore it is immaterial
whether the question comes to the Supreme Court originally
from the probate or from the Superior Court, the reason stated
being that in this way " there is a symmetrical completion
of a matter in the court in which it was commenced."   It
may be noticed, further, that the conclusion here stated by
the court, as based upon previous decisions, is expressly de-
clared by Gen. Statutes, § 532, which is in recognition and
affirmance of the common law.

But it by no means follows, or is to be understood, that
ordinarily there is any such identity between the necessary
incidental and implied powers of courts of probate and the
equity powers of chancery courts of general jurisdiction.
The contrary fully appears in cases referred to and quoted
elsewhere in this opinion.   The test is the necessity, in or-
der to discharge the duty committed in such a way as to best
promote the end and policy of the law in delegating the
power and jurisdiction to such statutory tribunal.   Indeed,
the language used in *Chase's Appeal* must be understood also
in the aspect of its bearing upon the claims of counsel, based

upon some dicta, which seem to have been misapprehended, in earlier cases, as for instance in *Beach* v. *Norton*, (*supra*,) which latter case this court found it necessary severely to criticise, and to overrule, so far at least as the reasoning and views were concerned, in *Vail's Appeal*, (*supra*,) saying :— " The judge of the court of probate is not a chancellor. He possesses chancery powers, but they are only such as are incidental, connected with the settlement of a particular estate, and necessary for the adjustment of equitable rights, and not to find and enforce equities in the ordinary and loose sense in which that term has come to be used in the law. * * * It must be a *right ;* one which a court of equity would take cognizance of and enforce, if application could be made to such a court." The ruling in *Chase's Appeal* is to be taken as an affirmance of the above language. As so understood, the incidental equity powers of courts of probate, though they may extend to and be exercised concerning matters within the exclusive jurisdiction of such courts, and therefore be employed where no other court could use them, are themselves never other or greater than such as are recognized as equitable rights by courts of chancery, and which would be cognizable and enforceable in such courts were it not that the particular jurisdiction concerning the subject matter had by statute been committed to the special tribunal therefor created ; while, on the other hand, by reason of the peculiar and circumscribed jurisdiction of such special tribunals, courts of probate may be, and often are, incapable of supplying as adequate equitable relief as equity courts of general chancery powers can afford.

Returning, after the above digression, to the subject more directly before us : In *Seeley's Appeal*, 56 Conn., 202, the court of probate refused to set out dower to the appellant. The Superior Court reversed the decree, and the original appellee appealed to this court. The facts were that an agreement had been entered into between the husband and wife that she should not ask for alimony and that a certain sum should be paid her by the husband. This court held such agreement void, and sustained the decree of the Supe-

rior Court.   Counsel for the appellants (original appellees) claimed that the question of equity involved was one which the court of probate had jurisdiction to hear and determine; and since the decision was adverse to such appellants, and in favor of the widow, the court apparently did not deem it incumbent to determine that question.   At all events, no allusion is made to it in the opinion.   But in the case of *Carter's Appeal,* 59 Conn., 576, it is the claim of counsel for the defendant that it was held that it was within the jurisdiction of courts of probate to hear and determine questions of this character and to order and decree accordingly.   In that case there was an ante-nuptial contract between the appellant and her late husband, in whose estate she claimed, which was held not a jointure, and whether such a settlement of property in her favor as to bar her from dower under Gen. Statutes, § 622, was not determined, it being held that, if it was not so, yet it was a contract by the terms of which, in consideration of the promises made to her therein, she relinquished all claim she might have for dower in the estate ; that she could not have what was given her by the contract and dower in addition ; and that if the contract was not to be regarded as barring her right to dower, she had made her election to take what was given her by it instead of dower.   A claim was made in the case that a court of probate could not enforce such an election, that being solely an equitable power, and in reference to that claim the court said, (p. 587) : " It is true that courts of probate do not have any general equity jurisdiction.   But where an estate is in settlement before a court of probate, and an equity arises between the persons interested in such an estate, incidental to and growing out of such interest, then that court not only may but must apply and enforce it, in order to do justice to all parties and to settle the estate.   To this extent courts of probate have the fullest equity powers."   Now this general principle is fully sustained by the cases which this court cited in its support, and which we have already cited in this opinion, and is undoubted.   The point is that the court held it applicable to and decisive of the question there

at issue, namely, that the court of probate could and must
enforce the election made.    What then is an election?  This
court itself there defined it to be " the choosing between two
rights, by a person who derives one of them under an instru-
ment in which a clear intention appears that he should not
enjoy both;" and further said, that "the legal effect of ·
taking one is to discharge the other."   Such election to ac-
cept the provisions of the agreement would take effect by
relation from the death of the husband, and would operate
to prevent a right of dower, in favor of the widow so elect-
ing, ever beneficially attaching to his estate.   It would be
quite analogous to the statutory election, Gen. Statutes,
§ 621, between dower and a devise or legacy made in lieu
thereof, in reference to which this court had already had oc-
casion to recognize the equity powers of a court of probate.
*Evans's Appeal*, 51 Conn., 435, 439.   In such a case, if the
widow elect to take the legacy, it is true that she does so,
not as a gratuity, but as an equivalent for what she relin-
quishes and as a purchaser.   *Lord* v. *Lord*, 23 Conn., 328;
*Security Co.* v. *Bryant*, 52 id., 311.   "The husband has no
power to give away his wife's dower, and all devises must
ordinarily be subject to her right.   But if the widow wishes
to have the legacy, she cannot claim a benefit under the will
without also being compelled to make good its provisions, by
which her dower in the realty is given to a stranger."   Bisp-
ham's Equity, § 298.   In other words, she must ratify his gift
of her dower, and enable the donee to take in the only way
in which he can take at all, by virtue of the provisions of
the will in his favor.   So in case of an intestate estate, if
she elects to accept the provisions of an ante-nuptial agree-
ment inconsistent with her right of dower, she thereby en-
ables the heirs at law to take the estate by descent, as free
and unencumbered by dower.   There would seem, therefore,
to be a pretty plain distinction between the effect of such
an election, and either a release of the right of dower once
attached to the heirs or devisees of a decedent, or a contract
made with the decedent during, or in case of divorce after
coverture, not in itself constituting a release of the right of

dower, but equitably entitling those who represent the es-
tate to such release, a decree for specific performance, or a
decree passing and vesting the title in such representatives.
In *Carter's Appeal* it is to be noticed that the court of pro-
bate having refused to set out dower to the widow, she ap-
·pealed to the Superior Court, which, as the court of probate
has by statute the sole and exclusive power to order such
assignment, was the only means by which she could seek to
obtain it, ( *Way* v. *Way*, 42 Conn., 52;) that in that court a
full finding of facts was made by a referee ; that upon those
facts she claimed to be entitled to dower, which claim was
over-ruled by the Superior Court, and thereupon she again
appealed to this court, before which, and upon the facts so
found, it was claimed by the appellees that the ante-nuptial
contract made between her and her husband was a jointure.
This the court held it not to be, certainly in the common law
meaning of the term.   It was further claimed to be a statu-
tory bar, as a " settlement of property made in her favor,"
and this the court did not decide, holding it unnecessary,
since " it was at any rate a contract by the terms of which
she did, in consideration of the promises made to her there-
in, relinquish and discharge all claims she had or might ever
have for dower in the estate of Mr. Carter, her late husband.
She did this in plain, unequivocal words, in the present tense."
If, therefore, the court had disaffirmed the previous action of
the court of probate, and of the Superior Court, it must, in
order to have done so, have first decided the question whether
the ante-nuptial agreement was a statutory bar, a question
raised in good faith, and held to be one of difficulty, ad-
versely to the appellees, and then, although the election
made was equivalent, in effect have decided against them
and dismissed them from court, in a proceeding brought there
by the appellant, although upon the same facts, brought to
the same court in another way, they would have had a per-
fectly plain case, thus enabling the appellant to win a case
on one ground, when the undisputed facts showed her right
doubtful on that ground, and that it was only left undecided
because on another equivalent ground she clearly had none

Surely it is easy enough to see why *Carter's Appeal* ought to have been decided as it was.

It seems manifest also, in the light of these cases, that any attempt to decide the questions which may arise under what we have called the second class of questions, namely those where other than strict statutory requisites are claimed to bar or prevent the existence of a right of dower against an estate, so that certain of them shall be held to be strict statutory requisites, within the exclusive jurisdiction of that court, and concerning which the action of such court, unappealed from, is final and conclusive, and others of them are held, like those arising from subsequent releases, bars or estoppels to rights which have once attached, not within the jurisdiction of courts of probate, would lead to constant and inexplicable confusion and uncertainty. It is far better that there should be a rule upon the subject, definite, practicable, and clear, even though it be somewhat arbitrary and lack in theoretical perfection. It is certain that the equity powers of courts of probate are and should be restricted, broad though they may be, along certain lines, and for the accomplishment of certain definite and definitely prescribed statutory ends. This is a necessary incident to its being a court of strict statutory jurisdiction. In *Hewitt's Appeal* a great contention in favor of the appellants was, that the Superior Court, by virtue of section 6 of the practice act, could find and enforce an equitable estoppel, on an appeal from probate, even if the court of probate could not, and thus exercise on such an appeal full equity powers. This court denied such power, and also over-ruled the further contention that "courts of probate have equity powers, to be administered in all cases where equitable considerations affect the matter with which they are dealing;" and proceeded to say :—"If the application is made for the assignment of dower, the court must be first satisfied that the applicant possesses the statutory requisites, without which no right of dower exists ; and this power of inquiry is not exhausted, nor is this duty discharged, until the court has satisfied itself that there is no objection, equitable or legal, to the assignment of dower ; for, having

once acquired jurisdiction to determine the right of the party to such assignment, it becomes, as to that matter, vested with the amplest chancery powers, to do full justice between all the parties before it." See also *Dickinson's Appeal*, (*supra.*)

Without extending this already lengthy consideration of this subject further, it must be apparent that there are, and must be, many cases falling within this second class, where the equity powers of courts of probate, limited and circumscribed as they are, are inadequate to furnish full and ample equitable relief. Such courts can neither grant injunctions, quiet titles, decree specific performance, nor pass title by decree. Nor can they, as we have seen, consider at all questions of a certain class, which may, in many cases, be more or less intimately connected, and, so to speak, interwoven with other questions within their exclusive jurisdiction to determine. On the other hand, where questions as to strict statutory requisites arise, the very facts upon which those questions are presented may also, as in the case of *Carter's Appeal*, present the most cogent of reasons, other than the want of such statutory requisites, strictly speaking, why an assignment of dower applied for should not be made.

On the whole, then, we deem the best and most serviceable rule upon the subject of jurisdiction, and the one which we think is fully sanctioned by authority, by analogy, and by the theory and practice of our courts, to be this : The order and decree of a court of probate, having jurisdiction of the settlement of an estate, assigning dower, unappealed from, is final and conclusive of the statutory right of the applicant to such assignment, and designates the lands in which the dower exists as against such estate. That is its conclusive extent. If, notwithstanding the existence of the statutory requisites, there are other grounds why the right of dower should be equitably held not to have attached, and those grounds appear, the court of probate, in the first instance, may, and properly should, refuse to set out dower. It ought not, however, to do so in a fairly doubtful case, since it thereby casts a burden on the applicant for dower which she is compelled to meet by an appeal, as her only practicable rem-

edy.  If such refusal is made, and an appeal taken, which is pursued to the end, the case being finally decided upon a finding made, as in *Carter's Appeal*, it ought, however decided, to conclude all parties from further litigation of any questions made or which might have been made in the case. The full day in court will then have been had.  But, if the case is not thus pursued, the decree of a court of probate assigning dower, and the assignment thereupon made, constitute no estoppel to a party having a proper and sufficient interest in the estate, and claiming to be aggrieved, from seeking in a court of full equity jurisdiction—the Superior Court—such relief as may be granted to him, in a case which concedes, as fully determined by the unappealed from action of the court of probate, the possession by the applicant for dower of the statutory requisites to entitle her thereto. Where however the legal right to dower has attached and it becomes inequitable for the widow to take the dower by reason of facts arising afterwards, the probate court cannot consider those facts, but must leave the parties interested against the assignment of dower to their remedy in a court of equity.

We have said that this rule will accord with the previous theory and practice of our courts.  We have already referred to *Seeley's Appeal*, 56 Conn., 202.  On the other hand, on quite similar facts in the case of *Stilson* v. *Stilson*, 46 Conn., 15, the Superior Court, on a bill in equity to enjoin the respondent against prosecuting a claim for dower where a decree setting out her dower had been obtained from the court of probate, from which decree an appeal was taken and then pending, found the facts and reserved the case for this court, which decided it in favor of the defendant, but with no intimation in the opinion that the case was not properly before the court.  In *Dickinson's Appeal*, (*supra*,) where the claim was that a voluntary distribution not in strict accordance with the statute should nevertheless bar a statutory distribution, this court held otherwise, saying that "an heir failing to get under the distribution what he had taken by the agreement, could, by a proceeding in equity, compel a con-

veyance of the agreed part to himself; and added:—"It is clear that if this were not so a court of probate would have many questions to try which it could not entertain or dispose of, and which would be entirely foreign to probate jurisdiction as now recognized. If, for instance, there had been a voluntary division, by written agreement, or by deeds, the question might be made whether the agreement or deeds had not been obtained by fraud or duress, or executed under mistake, or, as suggested by the pleadings in this case, whether the agreement, if originally valid, had not been lawfully rescinded, or whether the agreement ought not to be set aside on equitable considerations. * * * The court of probate cannot go into these inquiries."

If it be said that the rule which we have stated nevertheless does permit, and that recent cases, such as *Carter's Appeal*, both permit and sanction courts of probate entering into such inquiries in certain instances, and that to this extent a concurrent jurisdiction in that court and in the Superior Court is recognized, that is no new doctrine, for in *Dailey* v. *City of New Haven*, 60 Conn., 314, 324, concurrent equitable jurisdiction between those courts in certain matters pertaining to trusts is expressly affirmed.

As bearing more or less directly upon various aspects of this inquiry, the following other cases in this jurisdiction may also be cited: *Whiting* v. *Whiting*, 4 Conn., 179; *Dickinson* v. *Hayes*, 31 id., 417; *Treat's Appeal*, and *Treat* v. *Treat*, 35 id., 210; *Hart* v. *Hart*, 44 id., 327; *Prindle* v. *Holcomb*, 45 id., 111, 123; *Butler* v. *Sisson*, 49 id., 580.

Applying what has been stated, as our view of the law, to the case before us, the judgment of the Superior Court in sustaining the defendant's third and fourth reasons of demurrer to the plaintiff's complaint must be held erroneous. We should have been sorry to hold otherwise if the allegations of the plaintiff's proposed amendment to the complaint, which the court refused to allow, are true, to the effect that the court of probate, in granting the defendant's application to set out dower to her, sustained the claim there made by her counsel, that it had no jurisdiction to determine the very

question which such counsel now claim was within its sole and exclusive jurisdiction, and concerning which it is affirmed that the plaintiff is concluded by its action.

The first reason of demurrer to the complaint, namely, the failure to state sufficient interest in the plaintiff to entitle him to bring the suit, was also sustained. The allegation was that " it will be necessary to sell all or a large portion of said real estate in order to pay the debts of said Seymour D. Hall and the expense of settlement; " coupled with the further allegation that the defendant's acts, in claiming and in procuring an order to set out dower, have clouded the title and made it difficult or impossible to sell the same for a fair valuation. Is this a sufficient averment of title in the plaintiff to enable him to maintain the suit? It seems to us that it is. The practice act, Gen. Statutes, § 880, requires and directs in pleading a plain and concise statement of material facts; not of the evidence by which they are to be proved. The material facts here are such as show an interest in the plaintiff, as, in his capacity of executor, a trustee for creditors of the estate. It is not enough, indeed, that the property *may* be needed for the payment of debts. It must appear that it is in fact so needed. *Johnson* v. *Conn. Bank*, 21 Conn., 148; *Sheldon* v. *Bradley*, 37 id., 324: *Bassett* v. *McKenna*, 52 id., 437. But what is meant by this? Surely it is not necessary to appear that it must, under all contingencies, be entirely exhausted by such payment. In the case of *Sheldon v. Bradley*, if the facts found by the committee had shown that a portion only of the one entire fund would have been exhausted in the payment of debts, can there be any doubt that the administrator's right to redeem would still have been maintained? Indeed, that very contingency is recognized (page 339,) for while the widow's right, as co-plaintiff, to the relief sought by her as widow of the intestate, is denied, the court adds, in conclusion : " On the final settlement of her husband's estate in the court of probate she may possibly be able to establish a right to share in the amount recovered by the administrator in these proceedings; " a right which it is very evident the

court could not have meant might be paramount to that of any creditor. Suppose that it was necessary to sell real estate for the payment of debts, and that property greater in value than the amount of such debts was so situated that it could not be beneficially divided for the purpose of sale, under which circumstances a statute long in existence, until merged in the broader one, now Gen. Statutes, § 600, provided for a second order by the court of probate for the sale of the whole, (Revision of 1875, p. 394, sect. 38,) could it be claimed that the executor's or administrator's interest as trustee for creditors was limited to so much only of the real estate as might, however detrimental to the whole estate, be sold for sufficient to pay such debts; and that as against a party claiming under a fraudulent deed, or holding an incumbrance which the estate was entitled to redeem, his right could, at the instance of such party, and against the manifest interest and presumed desire of the heirs, be so limited, circumscribed and carved up? We think not. Executors and administrators are trustees, not for the creditors alone, "but for the benefit of all who have an interest in the estate." *Johnson* v. *Blackman*, 11 Conn., 357. Under Gen. Statutes, § 577, an executor or administrator, during the settlement of the estate, stands "as the representative, in a certain sense as the trustee, of the persons to whom the law would carry the land when it had been judicially determined that it was not needed for the payment of debts." *Remington* v. *Am. Bible Society*, 44 Conn., 517. Now it seems to us that the complaint contains a "plain and concise statement," to the effect that it would be necessary to sell either all or a large portion of the real estate in which the defendant claimed and obtained an order that dower should be assigned to her, in order to pay the debts and charges against the estate, and that in consequence of her acts the title to such real estate as it would be necessary to sell, whether all, or a large portion though not all, was clouded, so that it was difficult or impossible to sell the same for a fair valuation, and that such acts had decreased its value. This is certainly an allegation that the real estate constitutes a fund or source to which it

will be necessary for the creditors of the estate to resort, and that such fund has been affected and impaired. And this, to say nothing of the ultimate rights of those who take the estate after the charges are discharged, whose interests, so far as they are involved by the executor's acts, he is bound to regard, we think is sufficient; certainly that it should be held so as against a demurrer, not for form but for substance only, and coupled with other grounds of demurrer sustained by the court below, preliminary in their nature, (Gen. Statutes, § 872,) for though not addressed to the writ, but to the complaint, and for matters apparent upon its face, they attack the jurisdiction of the court.

Nothing which we have said should be deemed as bearing upon the right of the defendant to ask, if she hereafter may desire, a fuller or more particular statement of the plaintiff's claim, in reference to his interest in the estate on which he relies to entitle him to maintain the suit. Gen. Statutes, § 880. Nor does it bear upon the question of the evidence by which, if contested, such allegation is to be established.

But this brings us to consider a claim made by the defendant's counsel. We quote from their brief. "But the principal objection to the complaint is that the right to decide whether the land should be sold is not in the executor, or in the Superior Court, but is in the court of probate. To enable the executor to sell he must get an order, after a hearing, from the court of probate. Only when that court has ordered the land to be sold can the executor have any possible power of sale or interest in the removal of a cloud. There is no allegation here that the court of probate has ordered its sale, or determined that it is necessary to sell it. The Superior Court cannot usurp the power of the court of probate, and decide that it will be necessary to sell the land. This allegation in the complaint is therefore superfluous, and shows no interest in the executor." Now, not only that that which this claim requires as allegation is not the ultimate fact to be stated, but the evidential one to support that statement, but also that such evidence would not be essential to its support, has been already, in effect, twice de-

cided by this court. In *Andrews* v. *Doolittle*, 11 Conn., 283, it was held that in a suit by an administrator against a fraud-ulent grantee of property, the insolvency of the estate, and the consequent deficiency of assets, may be proved by other evidence than the order and decree of the court of probate, this being a proper question to be tried by a court and jury. The court, WILLIAMS, C. J., (p. 288,) uses very forcible lan-guage. It was said:—"This brings us to the next question in this case, how is this insolvency to be proved? The de-fendant claims that it can be done only by the orders and decrees of the court of probate; that this is the tribunal constituted for this purpose; and that it would be almost impracticable to try the question by a jury. While this court are not desirous of embarrassing themselves, or a jury, with questions cognizable only by the court of probate, they are not willing to establish a technical rule by which a sure de-fense would be provided for the fraudulent grantee of a de-ceased person, and such, it is apprehended, would be the effect of adopting the principle claimed by the defendant. The administrator must inventory these articles so fraudu-lently conveyed. Suppose they amount to more than the debts, how can the court of probate determine this estate to be insolvent? That court cannot do it. Of course, as the estate appears solvent at the probate office, the fraudulent grantee may cover himself by this shield; and as the court of probate can make no order which will reach him, he may safely retain the property. The fact is, the court of probate can never determine the insolvency of the estate until the property is sold and the administration account settled; and if this defendant, or persons in his situation, can prevent a sale of property in this way, then the estate can never be settled; and as the court of probate cannot decree its insol-vency he may always retain the property. From the neces-sity of the case, therefore, this question must be tried before the courts of common law."

Again, in *Bassett* v. *McKenna*, (*supra*,) an action by an administrator to set aside a fraudulent deed, the defendant objected to the admission of the report of the commissioners

on the estate, and this court, CARPENTER, J., in passing up-
on the question, said :—" The court admitted it for the pur-
pose of proving that the estate was indebted in the several
amounts therein stated.   By that we understand that it was
admitted to show the amount of indebtedness, solely for the
purposes of this case.   As the report of the commissioners is
the only evidence of the existence and amount of the debts,
as between the estate and the creditors, it is reasonable that
in this proceeding, the object of which is to supply the estate
with funds for the payment of the debts, the plaintiff should
be permitted to show the amount of the debts by the report
itself.   At least it is admissible for that purpose."

In view of the conclusions which we have reached in ref-
erence to the questions raised by the assignments of error in
the reasons of appeal, relating to the judgment on the de-
murrer, the other questions presented by such reasons of ap-
peal become immaterial.   We will, however, say that it
appears to us very evident that there was nothing erroneous
in the action of the court in overruling the application of
Seymour D. Hall to be joined as a party plaintiff.   The
allowance of such application, at such time, was within the
discretion of the court; a discretion which, under existing
circumstances, seems to have been properly exercised.   Even
if there had been error in this respect, the executor could
not, as such, have been thereby aggrieved.   It could in no
wise affect his standing in court.

There is error in reference to the ruling upon the demur-
rer, and the judgment of the Superior Court is reversed.

In this opinion the other judges concurred.