# IN RE MICHAELA LEE R.*
## (SC 16122)

McDonald, C. J., and Borden, Norcott, Katz, Palmer, Sullivan and Vertefeuille, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 16—officially released July 11, 2000

*Patrick B. Kwanashie*, assistant attorney general, with whom were *Maite Barainca*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellant (plaintiff).

*Bernadette M. Keyes*, with whom, on the brief, was *Shari A. Murphy*, for the appellee (defendant).

KATZ, J. This appeal requires us to determine whether a Probate Court of this state or the plaintiff, the commissioner of public health (commissioner),[1] has the authority to delete a biological parent's name from a birth certificate when there is no allegation that the information is inaccurate. We conclude that neither the Probate Court nor the commissioner possesses such authority.

The record reveals the following relevant facts and procedural history. Michaela Lee R. (Michaela Lee), the daughter of the defendant,[2] was born in 1985. At that time, the name of her biological father was placed on her birth certificate. The father, a notorious criminal in the New Haven area who has been imprisoned for most of his adult life, never developed a relationship with the child nor contributed to her financial support. As a result, in 1994, the Probate Court for the district of Madison, terminated the parental rights of Michaela Lee's father.

Thereafter, the defendant, on behalf of Michaela Lee, applied to several private schools that require applicants to provide a "long form" birth certificate.[3] Upon

---

[1] The commissioner and the department of public health were formerly known as the commissioner and the department of public health and addiction services. See Public Acts 1995, No. 95-257, §§ 12, 21, 58.

[2] The defendant is Michaela Lee's mother, who sought to amend her daughter's birth certificate by changing the child's name.

[3] A "long form" birth certificate is issued at birth, pursuant to General Statutes § 7-48. It contains, inter alia, the names of the child's biological parents. Pursuant to General Statutes § 7-52, the registrar of vital statistics or the department may issue a "short form" certification of birth registration, which contains only the child's name, gender, date and place of birth, and date of filing of certificate of birth, not parental information. Pursuant to General Statutes § 7-55, the short form certificate has the same legal force and effect as a long form certificate.

General Statutes (Rev. to 1995) § 7-48 (a) provides in relevant part: "Not later than ten days after each live birth which occurs in this state, a birth certificate shall be filed with the registrar of vital statistics in the town in which the birth occurred and the certificate shall be registered if properly

reviewing the application, several school officials recognized the father's name on the birth certificate and expressed concern about the possibility that he would come to campus. As a result, in February, 1996, the defendant applied to the Probate Court for the district of Madison to change Michaela Lee's surname and to remove the name of the biological father from the birth certificate.[4]

Following a hearing in March, 1996, the Probate Court granted the change of name application and ordered

filed. . . . Each birth certificate shall contain such information as the department of public health and addiction services may require. Medical and health information which is required by the department shall be recorded on a confidential portion of the certificate to be sent directly to the department for statistical and health purposes. This confidential portion shall be destroyed at the end of three years. The department shall give due consideration to national uniformity in vital statistics in prescribing the form and content of such certificate."

General Statutes (Rev. to 1995) § 7-52 provides: "Certification of birth registration. (1) The registrar of vital statistics of the town in which the birth occurred, (2) the registrar of vital statistics of the town in which the mother resided at the time of the birth or (3) the department of public health and addiction services shall issue, upon the request of the person to whom the record of birth relates, if over sixteen years of age, or of a parent, spouse or legal representative of such person, a certification of birth registration, which shall contain only the name, sex, date of birth, place of birth and date of filing of the certificate of birth of the person to whom it relates."

General Statutes (Rev. to 1995) § 7-55 provides: "Certification of birth to have force and effect of original. Any certification of birth, when properly certified by the registrar of the town in which the birth occurred or of the town in which the mother resided at the time of the birth or the department of public health and addiction services, shall be prima facie evidence of the facts therein stated in all courts and places and in all actions, proceedings or applications, judicial, administrative or otherwise, and such certification of birth shall have the same force and effect, wherever offered, with respect to the facts therein stated as an original certificate of birth."

Hereafter, unless otherwise indicated, all references to statutes are to the 1995 revision in effect at the time of the relevant proceedings.

[4] The defendant applied for a name change pursuant to General Statutes § 45a-99, which provides: "Jurisdiction to grant change of name. The courts of probate shall have concurrent jurisdiction with the Superior Court, as provided in section 52-11, to grant a change of name, except a change of name granted in accordance with subsection (a) of section 46b-63."

the commissioner to remove the biological father's name from Michaela Lee's birth certificate. The Probate Court determined that General Statutes (Rev. to 1995) § 19a-42 (d)[5] provided courts of competent jurisdiction with the implied power to amend or to order an amendment of a birth certificate. Additionally, the Probate Court concluded that, pursuant to the commissioner's general supervisory powers over birth certificates under General Statutes (Rev. to 1995) § 19a-40,[6] and the decision of the United States District Court of the District of Connecticut in *Darnell* v. *Lloyd*, 395 F. Sup. 1210 (D. Conn. 1975),[7] the commissioner had the power to amend birth certificates beyond making changes that are specifically authorized by statute.

Subsequently, the commissioner moved for reconsideration of the Probate Court's decision, claiming that he had not been provided with notice of the hearing and that the Probate Court's decision had been affected by factual and legal errors. The Probate Court denied the commissioner's motion, finding that notice of the hearing had been mailed to the department of public health (department) and, therefore, that the commissioner's claim was without merit.

---

[5] General Statutes (Rev. to 1995) § 19a-42 (d) provides: "Upon receipt of a certified copy of an order of a court of competent jurisdiction changing the name of a person born in this state and upon request of such person or his parents, guardian, or legal representative, the commissioner of public health and addiction services shall amend the birth certificate to show the new name."

[6] General Statutes (Rev. to 1995) § 19a-40 provides: "The department of public health and addiction services shall have general supervision of the state system of registration of births, marriages and deaths, and shall prepare the necessary methods and forms for obtaining and preserving such records in order to insure the faithful registration of the same in the several towns and in said department. Said department shall recommend such forms and legislation as are necessary to secure complete and accurate registration of vital statistics throughout the state. The commissioner of public health and addiction services shall be the superintendent of registration of vital statistics."

[7] See part II B of this opinion for a discussion of *Darnell*.

Thereafter, pursuant to General Statutes (Rev. to 1995) §§ 45a-186 and 45a-187,[8] the commissioner appealed from the Probate Court's judgment to the Superior Court, arguing that only the commissioner has the authority to amend birth certificates and, therefore, that the Probate Court lacked subject matter jurisdiction to amend or to order the amendment of Michaela Lee's birth certificate.[9] After a trial, the Superior Court, *DeMayo, J.*, affirmed the judgment of the Probate Court and ordered the father's name removed from the birth certificate. The trial court, sitting as the Probate Court,[10] concluded that, pursuant to General Statutes (Rev. to 1995) § 45a-98 (a),[11] which provides probate courts with

[8] General Statutes (Rev. to 1995) § 45a-186 provides in relevant part: "Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the superior court . . . . Appeals from any decision rendered in any case after a record is made under sections 51-72 and 51-73 shall be on the record and shall not be a trial de novo."

General Statutes (Rev. to 1995) § 45a-187 (a) provides: "An appeal under section 45a-186 by those of the age of majority and who are present or who have legal notice to be present, shall be taken within thirty days. If such persons have no notice to be present and are not present, then appeal shall be taken within twelve months, except for appeals by such persons from a decree of termination of parental rights or adoption, in which case appeal shall be taken within ninety days."

[9] The commissioner also asserted that, because the department had not received notice of the hearing, the Probate Court lacked personal jurisdiction over the commissioner. Additionally, the commissioner argued that the Probate Court based its decision on faulty legal reasoning and that the department had not received proper notice of the Probate Court's decision.

[10] "When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988); *Satti* v. *Rago*, 186 Conn. 360, 365, 441 A.2d 615 (1982). In probate appeals, a Superior Court may admit any evidence that was received by the Probate Court or could have been received by it . . . [but] may not receive evidence that the Probate Court could not have received because it came into existence subsequent to the Probate Court hearing." (Internal quotation marks omitted.) *Hall* v. *Schoenwetter*, 239 Conn. 553, 556 n.6, 686 A.2d 980 (1996).

[11] General Statutes (Rev. to 1995) § 45a-98 (a) provides in relevant part: "Courts of probate in their respective districts shall have the power to . . . (6) make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state."

the power to make orders to carry into effect the power and jurisdiction conferred on them, and General Statutes § 45a-99, which permits probate courts to grant an application for a change of name,[12] the Probate Court

---

[12] The trial court also noted that probate courts have implied powers to amend birth certificates under General Statutes § 45a-736, which authorizes probate courts to change a name as a result of adoption proceedings, and General Statutes (Rev. to 1995) § 46b-172a, which permits probate courts to adjudicate paternity claims.

General Statutes § 45a-736 provides: "Change of name of adopted person. Any court of probate, as part of its approval of any agreement of adoption or declaration of an intention to adopt, may change the name of the person adopted, as requested by the adopting parent or parents."

General Statutes (Rev. to 1995) § 46b-172a provides in relevant part: "(a) Any person claiming to be the father of a child born out of wedlock may at any time but no later than sixty days after the date of notice under section 45a-716, file a claim for paternity with the court of probate for the district in which either the mother or the child resides, on forms provided by such court. The claim shall contain the claimant's name and address, the name and last-known address of the mother and the month and year of the birth or expected birth of the child. Within five days after the filing of a claim for paternity, the judge of the court of probate shall cause a certified copy of such claim to be mailed by certified mail to (1) the vital records section of the department of public health and addiction services and (2) to the mother or prospective mother of such child at the last-known address shown on the claim for paternity. The claim for paternity shall be admissible in any action for paternity under section 46b-160, and shall estop the claimant from denying his paternity of such child and shall contain language that he acknowledges liability for contribution to the support and education of the child after its birth and for contribution to the pregnancy-related medical expenses of the mother.

"(b) If a claim for paternity is filed by the father of any minor child born out of wedlock, the court of probate shall schedule a hearing on such claim, send notice of the hearing to all parties involved and proceed accordingly.

"(c) The child shall be made a party to the action. Said child shall be represented by a guardian ad litem appointed by the court in accordance with section 45a-708. Payment shall be made in accordance with such section from the Probate Court Administration Fund.

"(d) In the event that the mother or the claimant father is a minor, the court shall appoint a guardian ad litem to represent him or her in accordance with the provisions of section 45a-708. Payment shall be made in accordance with said section from the Probate Court Administration Fund.

"(e) Upon the motion of the putative father, the mother, or his or her counsel, or the judge of probate having jurisdiction over such application, filed not later than three days prior to any hearing scheduled on such claim,

had subject matter jurisdiction over the request for an amendment to the birth certificate. The trial court further concluded that probate courts have the equitable power to amend birth certificates to remove parental information when they find that an amendment is in the child's best interest and protects the child's reputation and privacy rights. Finally, the trial court concluded that, pursuant to General Statutes (Rev. to 1995) §§ 19a-41 and 19a-42 (e),[13] the commissioner was

---

the probate court administrator shall appoint a three-judge court from among the several judges of probate to hear such claim. Such three-judge court shall consist of at least one judge who is an attorney-at-law admitted to practice in this state. The judge of the court of probate having jurisdiction over such application under the provisions of this section shall be a member, provided such judge may disqualify himself in which case all three members of such court shall be appointed by the probate court administrator. Such three-judge court when convened shall have all the powers and duties set forth under sections 17a-75 to 17a-83, inclusive, 17a-450 to 17a-484, inclusive, 17a-495 to 17a-528, inclusive, 17a-540 to 17a-550, inclusive, 17a-560 to 17a-576, inclusive, and 17a-615 to 17a-618, inclusive, and shall be subject to all of the provisions of law as if it were a single-judge court. The judges of such court shall designate a chief judge from among their members. All records for any case before the three-judge court shall be maintained in the court of probate having jurisdiction over the matter as if the three-judge court had not been appointed.

"(f) By filing a claim under this section, the putative father submits to the jurisdiction of the court of probate . . . ."

[13] General Statutes (Rev. to 1995) § 19a-41 provides: "Compilation of vital records and statistics. Regulations. The commissioner of public health and addiction services shall adopt regulations in accordance with the provisions of chapter 54 specifying the methods of recording, preserving, indexing and amending vital records and statistics collected under the provisions of sections 19a-42 to 19a-45, inclusive, chapter 93, chapter 815e or section 46b-68. The commissioner shall prepare such forms as he deems necessary to carry out the provisions of sections 19a-42 to 19a-45, inclusive, chapter 93, chapter 815e and section 46b-68. The penalty provided for by section 7-41 shall not apply to registrars of vital statistics not complying with such regulations, if such registrars have complied in all other respects with the provisions of the statutes to which said penalty is applicable."

General Statutes (Rev. to 1995) § 19a-42 (e) provides: "When an applicant submits the documentation required by the regulations to amend a vital record the commissioner of public health and addiction services shall hold a hearing, in accordance with chapter 54, if the commissioner has reasonable cause to doubt the validity or adequacy of such documentation."

authorized to amend the birth certificate, and, accordingly, ordered the commissioner to execute the Probate Court's order.

The commissioner appealed to the Appellate Court from the judgment of the trial court and, pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c), we transferred the appeal to this court. We reverse the judgment of the trial court.

The commissioner claims on appeal that, because nothing in the General Statutes expressly authorizes probate courts to order the removal of accurate information from a birth certificate, the trial court improperly concluded that the Probate Court had subject matter jurisdiction to order the removal of the biological father's name from Michaela Lee's birth certificate. The commissioner also argues that the Probate Court's implied and equitable powers do not provide that court with jurisdiction to amend birth certificates in the requested manner. Additionally, the commissioner contends that even *he* does not have the power to remove the father's name, because, pursuant to General Statutes (Rev. to 1995) §§ 7-42[14] and 19a-42,[15] he may amend

_____

[14] General Statutes (Rev. to 1995) § 7-42 provides in relevant part: "Each registrar of vital statistics shall ascertain as accurately as he can all marriages and deaths, and all births, upon the affidavit of the father or mother, occurring in his town, and record the same in a book or books kept by him for that purpose, in such form and with such particulars as are prescribed by the department of public health and addiction services. He shall . . . amend or correct such certificates and the records thereof whenever he discovers errors upon the face thereof, and shall insert or supply therein omissions of facts existing at the time of the recording of such certificates except that all errors or omissions concerned with questions of parentage shall be within the sole jurisdiction of the department of public health and addiction services as provided in section 19a-42 . . . ."

[15] General Statutes (Rev. to 1995) § 19a-42 provides: "Amendment of vital records. (a) To protect the integrity and accuracy of vital records a certificate registered under chapter 93 may be amended only in accordance with sections 19a-41 to 19a-45, inclusive, chapter 93 and regulations adopted by the commissioner of public health and addiction services pursuant to chapter 54. When a certificate is amended under this section the commissioner shall report the amendment to the registrars of vital statistics affected and their records shall be amended accordingly.

birth certificates only to correct errors or omissions regarding parentage, and the defendant does not seek amendment on those grounds.

The defendant argues in response that the Probate Court had the authority to order the amendment of

"(b) A certificate that is amended under this section shall be marked 'Amended' on the original. The date of amendment and a summary description of the evidence submitted in support of the amendment shall be endorsed on or made a part of the record. The original birth, death or marriage certificate shall be sealed and kept in a confidential file at the department of public health and addiction services and may be unsealed only upon the order of the commissioner of public health and addiction services. A copy of the original shall be made and such copy shall be amended in such a manner that the language to be changed is no longer visible. The copy shall be a public record. The commissioner of public health and addiction services shall prescribe by regulation, adopted in accordance with chapter 54, the conditions under which additions or minor corrections may be made to vital records within one year after the date of the event without the vital record being marked 'Amended'.

"(c) Upon written request of both parents, receipt of a sworn acknowledgment of paternity signed by both parents of a child born out of wedlock and receipt of a fee of twenty-five dollars, the commissioner of public health and addiction services shall amend the birth certificate to show such paternity if paternity is not already shown on the birth certificate or to change the surname of the child or both. Such certificate shall not be marked 'Amended'.

"(d) Upon receipt of a certified copy of an order of a court of competent jurisdiction changing the name of a person born in this state and upon request of such person or his parents, guardian, or legal representative, the commissioner of public health and addiction services shall amend the birth certificate to show the new name.

"(e) When an applicant submits the documentation required by the regulations to amend a vital record the commissioner of public health and addiction services shall hold a hearing, in accordance with chapter 54, if the commissioner has reasonable cause to doubt the validity or adequacy of such documentation.

"(f) When an amendment under this section involves the changing of existing language on a death certificate due to an error pertaining to the cause of death, the death certificate shall be amended in such a manner that the original language is still visible. A copy of the death certificate shall be made. The original death certificate shall be sealed and kept in a confidential file at the department of public health and addiction services and only the commissioner of public health and addiction services may order it unsealed. The copy shall be amended in such a manner that the language to be changed is no longer visible. The copy shall be a public document."

Michaela Lee's birth certificate pursuant to both its explicit and implied statutory powers. Additionally, the defendant asserts that, because Michaela Lee's privacy interests are implicated, the commissioner must demonstrate a substantial state interest in not deleting the biological father's name. The defendant also renews several procedural claims made before the trial court as alternate grounds upon which to affirm the judgment.

I

The commissioner first claims that the trial court improperly concluded that the Probate Court had subject matter jurisdiction over the defendant's request for a birth certificate amendment. According to the commissioner, nothing in the statutory, implied or equitable powers of probate courts provides them with such jurisdiction. We agree with the commissioner.

We begin by outlining the jurisdiction of probate courts and the statutory provisions specifically regarding amendments to birth certificates. It is well established that courts of probate are statutory tribunals that have no common-law jurisdiction. *In re Juvenile Appeal (85-BC)*, 195 Conn. 344, 366 n.18, 488 A.2d 790 (1985); *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 428, 279 A.2d 726 (1971); *Brownell* v. *Union & New Haven Trust Co.*, 143 Conn. 662, 665, 124 A.2d 901 (1956); *Killen* v. *Klebanoff*, 140 Conn. 111, 115, 98 A.2d 520 (1953); *Potter* v. *Alcorn*, 140 Conn. 96, 100, 99 A.2d 97 (1953). Accordingly, they "can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power. . . . *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988); *Killen* v. *Klebanoff*, [supra, 115]; *Palmer* v. *Reeves*, 120 Conn. 405, 408–409, 182 A. 138 (1935). [A] court which exercises a limited and statutory jurisdiction is without jurisdiction to act

unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation. *Marcus' Appeal from Probate,* 199 Conn. 524, 528–29, 509 A.2d 1 (1986); *Heiser* v. *Morgan Guaranty Trust Co.,* 150 Conn. 563, 565, 192 A.2d 44 (1963)." (Internal quotation marks omitted.) *In re Baby Z.,* 247 Conn. 474, 485–86, 724 A.2d 1035 (1999); see also *Dept. of Social Services* v. *Saunders,* 247 Conn. 686, 708, 724 A.2d 1093 (1999); *Carten* v. *Carten,* 153 Conn. 603, 614, 219 A.2d 711 (1966). "Ordinarily, therefore, whether a Probate Court has jurisdiction to enter a given order depends upon the interpretation of a statute. [1 W. Locke & P. Kohn, Connecticut Probate Practice (1950) p. 76]." *Potter* v. *Alcorn,* supra, 100.

Chapter 801a of the General Statutes outlines the jurisdiction and powers of probate courts. In addition to various powers regarding wills and estates, probate courts are provided with the authority to "make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state." General Statutes (Rev. to 1995) § 45a-98 (a) (6). Additionally, § 45a-99; see footnote 4 of this opinion; provides probate courts with the jurisdictional authority to grant applications for a change of name.[16] Other sections of the General Statutes also address the jurisdiction of probate courts. In particular, General Statutes § 45a-736 permits probate courts to change the name of an adopted person as part of its approval of an adoption agreement. See footnote 12 of this opinion. We note that none of these sections addresses the power of probate courts to amend birth certificates or to order the department to amend birth certificates beyond the specific situations cited.

---

[16] Once a Probate Court or other court of competent jurisdiction grants a change of name, it is the commissioner, rather than the court, that actually amends the birth certificate to reflect the new name. See General Statutes (Rev. to 1995) § 19a-42 (d).

General Statutes §§ 7-42 through 7-59 and §§ 19a-40 through 19a-42 govern the issuance and amendment of birth certificates. Local registrars of vital statistics[17] may amend birth certificates "whenever [she or] he discovers errors upon the face thereof . . . except that all errors or omissions concerned with questions of parentage shall be within the sole jurisdiction of the [department] as provided in section 19a-42. . . ." General Statutes (Rev. to 1995) § 7-42. Section 19a-42 further governs the amendment, by the commissioner, of birth certificates and other vital records[18] by prescribing the procedures for amending such documents; see General Statutes (Rev. to 1995) § 19a-42 (b); and permitting amendments in certain limited circumstances. That statute also mandates that birth certificates "be amended only in accordance with sections 19a-41 to 19a-45, inclusive, chapter 93 and regulations adopted by the [commissioner] pursuant to chapter 54. . . ." General Statutes (Rev. to 1995) § 19a-42 (a). Additionally, § 19a-42 (c) permits the commissioner to amend birth certificates upon the establishment of paternity to reflect the paternity and change the child's surname. General Statutes (Rev. to 1995) § 7-50[19] similarly permits the department to amend a birth certificate upon the establishment of paternity. Section 19a-42 (d) also permits the commissioner to amend birth certificates to reflect a new name upon the issuance of a change of name order by a court of competent jurisdiction. We note that none of the aforementioned provisions in any way confers on the Probate Court the power to amend

[17] General Statutes § 7-36 defines a registrar of vital statistics as "the registrar of births, marriages and deaths or any public official charged with the care of returns relating to vital statistics."

[18] In addition to birth certificates, vital records include certificates of "death, fetal death or marriage." General Statutes § 7-47a (3).

[19] General Statutes (Rev. to 1995) § 7-50 provides in relevant part: "In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the birth certificate in accordance with the order of the court. . . ."

birth certificates. With these provisions in mind, we turn our attention to the commissioner's first argument on appeal.

A

The trial court determined that the Probate Court had jurisdiction, pursuant to § 19a-42 (d), to order an amendment of Michaela Lee's birth certificate. We agree with the commissioner that our holding in this case is governed by the plain language of §§ 7-42 and 19a-42.

Whether the Probate Court had subject matter jurisdiction to order the removal of the biological father's name from the birth certificate involves a question of statutory interpretation over which our review is plenary. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) *Doucette* v. *Pomes*, 247 Conn. 442, 455, 724 A.2d 481 (1999).

As with all issues of statutory interpretation, we look first to the language of the statute. *Rhodes* v. *Hartford*, 201 Conn. 89, 93, 513 A.2d 124 (1986). Nothing in the language of any statute provides probate courts with jurisdiction to order the deletion of a parent's name from a birth certificate. See *Mayor* v. *Mayor*, 17 Conn. App. 627, 631–32, 554 A.2d 1109 (1989) (no statute expressly conferred jurisdiction on Superior Court to

change name of minor child). Additionally, General Statutes (Rev. to 1995) § 7-42 specifically addresses amendments to birth certificates regarding parentage information and provides that "all errors or omissions concerned with questions of parentage shall be within the *sole jurisdiction* of the [department] as provided in section 19a-42 . . . ." (Emphasis added.) The clear and unambiguous language of this provision vests *sole* authority concerning matters of parentage on birth certificates with the department, thereby removing it from the jurisdiction of local registrars of vital statistics and presumably from courts of probate.[20] Therefore,

---

[20] A recent amendment to §§ 19a-42 (c) (2) and 7-50 authorizes the commissioner and the department to delete from a birth certificate, the name of a father, whose paternity has been established through a voluntary acknowledgment of paternity or an order of a court establishing paternity. See Public Acts, Spec. Sess., June 18, 1997, No. 97-7, §§ 4, 12, 38.

General Statutes § 7-50 currently provides in relevant part: "Upon the filing of a voluntary acknowledgment or adjudication of paternity in the paternity registry maintained by the Department of Public Health, as required by section 19a-42a, the name of the father of a child born out of wedlock shall be entered in or upon the birth certificate or birth record of such child. Thereafter, the name of the father on such certificate or record shall be removed or changed only upon the filing of a rescission in such registry, as provided in section 19a-42a, or upon the order of a court of competent jurisdiction. . . ."

General Statutes § 19a-42 (c) (2) currently provides: "The commissioner shall thereafter amend such child's birth certificate to remove or change the father's name only upon the filing of a rescission in the paternity registry established under section 19a-42a, as provided in subsection (a) of section 46b-172, or upon the order of a court of competent jurisdiction."

According to the new language in those sections, the department and the commissioner may amend the birth certificate to remove the father's name only upon the filing of a rescission in the paternity registry maintained by the department or upon order of a court of competent jurisdiction. Although the trial court noted in its decision that the amended language in § 7-50 "expressly authorized the removal of a father's name from a child's birth certificate in paternity actions," we do not find this amendment determinative of the present case. First, the amendment permits the removal of a father's name from a birth certificate only in very limited circumstances. Specifically, the name may be removed when, following a voluntary acknowledgment of paternity or an adjudication of paternity, the father's name had been entered on the birth certificate, and then only upon the filing of a rescission, pursuant to General Statutes § 46b-172 (a) (2), in the paternity

according to the express terms of § 7-42, the Probate Court did not have jurisdiction to amend or order an amendment of Michaela Lee's birth certificate to remove her biological father's name. See *In re Baby Z.*, supra, 247 Conn. 490 (Probate Court did not have jurisdiction where no statute conferred jurisdiction and another statute explicitly provided adoption review board with jurisdiction).

Furthermore, General Statutes (Rev. to 1995) § 19a-42 (a), to which § 7-42 refers, explicitly provides that birth certificates may be amended "only in accordance with sections 19a-41 to 19a-45, inclusive, chapter 93 and regulations adopted by the [commissioner] . . . ." That section, therefore, provides the only methods for amending birth certificates. None of the provisions cited, §§ 19a-41 through 19a-45, chapter 93 or the department's regulations, provides a method by which courts of probate may order the commissioner to amend a birth certificate to remove the accurate name of a biological parent. Therefore, because birth certificates may be amended solely in accordance with these provisions and because these provisions do not provide express authority for probate courts to amend birth

registry or upon the order of a court of competent jurisdiction. Additionally, § 46b-172 further limits the circumstances in which a rescission of paternity may be filed. The rescission must be filed within sixty days of the acknowledgment of paternity or prior to the date of an agreement to provide child support. After that time period, an acknowledgment of paternity may be challenged "only on the basis of fraud, duress or material mistake of fact . . . ." General Statutes § 46b-172 (a) (2).

The present situation differs from the circumstances to which the 1997 amendment applies. Here, the father's name had been entered on Michaela Lee's birth certificate at birth. The entry was not the result of a later acknowledgment of paternity or a court adjudication of paternity. Accordingly, the amendment does not apply to the circumstances of the present case. Additionally, even if the amended statutes were applicable, the amendment became effective after the relevant proceedings in this case. The relevant inquiry is whether, at the time of the Probate Court's order, it was vested with such jurisdiction. The defendant does not argue, and we do not find, that the amended statutes control the present case.

certificates, § 19a-42 (a) supports the conclusion that the Probate Court was without jurisdiction to order an amendment of Michaela Lee's birth certificate.

The legislative history of § 7-42 also supports the conclusion that the Probate Court did not have jurisdiction to order the amendment of Michaela Lee's birth certificate. The debate surrounding the enactment of the relevant portion of § 7-42 is highly indicative of the legislature's intention regarding alterations to birth certificates involving parentage. In 1969, the legislature amended § 7-42 to add the language vesting authority over errors and omissions concerning parentage with the department. In explaining the purpose of the bill, Senator Jay W. Jackson explained that "this [bill] takes away from the town clerks the power to correct errors on the face of their records on *all matters* concerned with questions of parentage and gives the powers to the state department of health." (Emphasis added.) 13 S. Proc., Pt. 4, 1969 Sess., p. 1948. Although the Senator's statements do not specifically discuss the power of courts of probate, they demonstrate an intention to vest sole responsibility for any alterations to birth certificates regarding parentage with the department. Accordingly, this statement supports the conclusion that the department has sole jurisdiction over matters concerning parentage recorded on birth certificates.

Our conclusion that the Probate Court did not have jurisdiction to order an amendment of Michaela Lee's birth certificate in these circumstances also comports with the legislative purpose underlying our vital records statutes. In examining the legislature's intention in enacting the vital records statutes, we consider the statutory scheme as a whole and presume that the legislature intended to create a harmonious body of law. *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 388, 698 A.2d 859 (1997); *Lieberman* v. *Reliable Refuse Co.*, 212 Conn. 661, 677, 563 A.2d 1013 (1989); *Powers* v.

*Ulichny*, 185 Conn. 145, 149, 440 A.2d 885 (1981). It is emphasized that vital records may be amended only in certain limited circumstances in order "[t]o protect the integrity and accuracy of vital records . . . ." General Statutes (Rev. to 1995) § 19a-42 (a). As the legislature recognized in § 19a-42 (a), the accuracy and reliability of these records is vital to the many purposes for which they are used.[21] Vesting authority to amend these documents with the commissioner, who may only correct errors or omissions concerning parentage, provides a uniform system of amending vital records and protects their integrity and accuracy. Accordingly, having examined the statutes relating to the amendment of birth certificates, we conclude that the legislature did not choose to grant probate courts the jurisdiction to order the amendment of birth certificates to remove the accurate name of a biological parent.

Because nothing in the language of § 7-42, § 19a-42 or any other vital records statute permits probate courts to amend birth certificates to remove accurate parental information, and probate courts may exercise only such powers as are conferred on them by statute; see *Castro* v. *Viera*, supra, 207 Conn. 428; we agree with the commissioner that the Probate Court was without jurisdiction to order an amendment of Michaela Lee's birth certificate.

## B

The defendant contends that, as the trial court concluded, the Probate Court had implied jurisdiction

[21] Vital records such as birth, marriage and death certificates are used as prima facie evidence of the facts contained therein in numerous instances. See General Statutes § 7-55. Birth certificates in particular, are often requested as proof of a person's name, age and citizenship. Additionally, vital records are admissible in courts of law as an exception to the hearsay rule as "proof of the facts required to be recorded." *State* v. *Torello*, 103 Conn. 511, 515, 131 A. 429 (1925); see also *Gett* v. *Isaacson*, 98 Conn. 539, 543–44, 120 A. 156 (1923); *Murray* v. *Supreme Lodge, N.E.O.P.*, 74 Conn. 715, 718–19, 52 A. 722 (1902); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.15.

derived from §§ 45a-99, 45a-736 and 46b-172a to order the amendment of Michaela Lee's birth certificate. We disagree.

We first note that the statutory sections cited by the defendant and the trial court do not relate specifically to the amendment of birth certificates. Section 45a-99; see footnote 4 of this opinion; provides courts of probate with the jurisdiction to grant applications for a change of name.[22] Probate courts have concurrent jurisdiction with the Superior Court over this subject area. Section 45a-736 authorizes probate courts to change the name of an adopted child as part of the approval of an adoption agreement, and § 46b-172a permits courts of probate to adjudicate claims of paternity. See footnote 12 of this opinion.

The defendant argues, and the trial court agreed, that these statutory sections provide probate courts with implicit jurisdiction to amend parental information recorded on a child's birth certificate. The trial court explained that, in particular, §§ 45a-736 and 46b-172a implicitly require probate courts to amend birth certificates to change parental information. The trial court explained that, in cases of adoption or the establishment of paternity, these sections permit probate courts to order the removal of a biological parent's name from the birth certificate and the insertion of the name of the adoptive parent or the name of the biological father established by the paternity proceeding. The trial court concluded that these provisions "reflect a legislative policy supportive of such changes" and imply that probate courts may amend other information relevant to an individual's legal identity.

We disagree with the trial court's interpretation of these provisions and its conclusion regarding the Pro-

[22] As noted previously, once a court of probate orders a name change, pursuant to § 19a-42 (d), it is the commissioner, not the court, that amends the birth certificate. See footnote 15 of this opinion.

bate Court's implied powers in the circumstances of the present case. Because we have concluded herein that §§ 7-42 and 19a-42 expressly vest sole authority over the amendment of parental information on birth certificates with the department, we do not interpret §§ 45a-99, 45a-736 or 46b-172a as providing implicit jurisdiction to the Probate Court to amend the birth certificate in the present case.

The limitations on the implied powers of probate courts are well established. We have recognized previously that, in addition to express statutory powers, probate courts also have those powers that are reasonably implied by statute. See *Dept. of Social Services* v. *Saunders*, supra, 247 Conn. 708; *Prince* v. *Sheffield*, 158 Conn. 286, 293–94, 259 A.2d 621 (1969). Exercise of implied or incidental powers, however, must be *necessary* for the Probate Court to carry out its statutory duties and to exercise the jurisdiction expressly conferred. See *Dept. of Social Services* v. *Saunders*, supra, 708; *Hall* v. *Meriden Trust & Safe Deposit Co.*, 103 Conn. 226, 230, 130 A. 157 (1925); *Massey* v. *Foote*, 92 Conn. 25, 26, 101 A. 499 (1917). The test of necessity, therefore, is whether the existence of an implied power is necessary for the Probate Court to discharge a duty committed to it by statute. 1 W. Locke & P. Kohn, supra, § 87. Thus, any power implied from §§ 45a-99, 45a-736 or 46b-172a must be necessary for the Probate Court to exercise other powers and duties that have been granted expressly by statute.

None of the provisions cited by the defendant discusses the power of probate courts to amend birth certificates even in the narrow circumstances to which each section pertains. Section 45a-99 provides probate courts with jurisdiction to act upon an application for a change of name, but does not provide any authority for probate courts to amend the applicant's birth certificate to reflect the new name. Rather, the department,

pursuant to the express language of § 19a-42 (d), amends the birth certificate upon receipt of a change of name order from a Probate Court and upon request of the applicant.

Similarly, § 45a-736 permits probate courts to change an adoptee's name upon request of the adopting parent or parents as part of its approval of the adoption agreement. This section, however, does not provide probate courts with the jurisdiction to amend the adopted person's birth certificate by inserting the new name. The department again has jurisdiction over this area pursuant to General Statutes (Rev. to 1995) § 7-53.[23] In cases of adoption, the department does not

[23] General Statutes (Rev. to 1995) § 7-53 provides: "Birth certificates of adopted persons born in this state. Upon receipt of the record of adoption referred to in subsection (e) of section 45a-745 or of other evidence satisfactory to the department of public health and addiction services that a person born in this state has been adopted, said department shall prepare a new birth certificate of such adopted person. Such new birth certificate shall include all the information required to be set forth in a certificate of birth of this state as of the date of birth, except that the adopting parents shall be named as the parents instead of the genetic parents and, when a certified copy of the birth of such person is requested by an authorized person, a copy of the new certificate of birth as prepared by the department shall be provided, except that the registrar of vital statistics of any town in which the birth of such person was recorded or the department of public health and addiction services may issue a certified copy of the original certificate of birth on file, marked with a notation by the issuer that such original certificate of birth has been superseded by a new certificate of birth as on file, or may permit the examination of such record upon a written order, in accordance with the provisions of section 45a-751, signed by the judge of the probate court for the district in which the adopted person was adopted or born or upon written order of the probate court in accordance with the provisions of section 45a-752, stating that he or it is of the opinion that the examination of the birth record of the adopted person by the adopting parents or the adopted person, if over eighteen years of age, or by the person wishing to examine the same or that the issuance of a copy of such birth certificate to the adopting parents, adopted person, if over eighteen years of age or to the person applying therefor will not be detrimental to the public interest or to the welfare of the adopted person or to the welfare of the genetic or adoptive parent or parents. Immediately after a new certificate of birth has been prepared, an exact copy of such certificate, together with a written notice of the evidence of adoption, shall be transmitted by the

amend the original birth certificate to eliminate the biological parents, but, rather, issues a new birth certificate reflecting the names of the adoptive parents, upon receipt of the record of adoption.[24] Both copies of the birth certificate remain on file and the original certificate may be examined in certain limited circumstances. See General Statutes § 45a-736. Thus, § 45a-736 does not provide probate courts with jurisdiction to order the commissioner to issue a new or amended certificate in cases of adoption, and § 7-53 expressly delegates jurisdiction over this area to the department.

Finally, § 46b-172a provides probate courts with jurisdiction to adjudicate claims of paternity by a putative father. The section does not, however, permit probate courts to change a child's name upon the establishment of paternity or to amend the child's birth certificate to reflect the name of the father. In fact, the section fails even to mention either of those issues. Rather, as we have noted herein; see footnote 20 of this opinion; pur-

department to the registrar of vital statistics of each town in this state in which the birth of the adopted person is recorded. The new birth certificate, the original certificate of birth on file and the evidence of adoption shall be filed and indexed, under such regulations as the department of public health and addiction services makes to carry out the provisions of this section and to prevent access to the records of birth and adoption and the information therein contained without due cause, except as herein provided. Any person, except such parents or adopted person, who discloses any information contained in such records, except as herein provided, shall be fined not more than five hundred dollars or imprisoned not more than six months or both. Whenever a certified copy of an adoption decree from a court of a foreign country, having jurisdiction of the adopted person, is filed with the department of public health and addiction services under the provisions of this section, such decree, when written in a language other than English, shall be accompanied by an English translation, which shall be subscribed and sworn to as a true translation by an American consulate officer stationed in such foreign country."

[24] Adoptees over the age of fourteen, adoptive parents or probate courts may request that the department not create a new certificate. See General Statutes § 45a-745 (e). Although probate courts may request that the commissioner not issue a new birth certificate, § 45a-745 does not permit probate courts to order the commissioner to create a new certificate.

suant to §§ 7-50 and 19a-42 (c), the commissioner has the authority to amend a birth certificate to show the adjudication of paternity if paternity is not already indicated on the birth certificate or to change the child's name. Accordingly, as in §§ 45a-99 and 45a-736, nothing in the language of § 46b-172a permits probate courts to amend birth certificates even in the narrow circumstance of a paternity adjudication, and other statutes— §§ 7-50 and 19a-42 (c)—expressly provide jurisdiction over the matter elsewhere.[25]

Finally, we note that the exercise of implicit jurisdiction to amend birth certificates is not necessary for probate courts to carry out any of their other statutory duties. See *Marcus' Appeal from Probate*, supra, 199 Conn. 528–29. Probate courts are not required to remove parental information from birth certificates under any provision of the General Statutes. Additionally, the implied power to amend birth certificates is not "necessary" for probate courts to carry out any of their statutory duties, such as reviewing change of name applications and adjudicating paternity. In the circumstances of the present case, the amendment of Michaela Lee's birth certificate was not necessary to the Probate Court's resolution of the matter before it, namely, the change of name application. The Probate Court was able to exercise its power under § 45a-99 to grant the name change without amending the birth certificate to delete the father's name. "The test is the necessity"; *Hall* v. *Pierson*, 63 Conn. 332, 342, 28 A. 544 (1893); and the present case fails that test. We agree with the commissioner, therefore, that "[n]othing in [§§ 45a-99, 45a-736 and 46b-172a] remotely suggests that the legisla-

---

[25] As previously noted, pursuant to a 1997 amendment to §§ 7-50 and 19a-42 (c) (2), the Probate Court has the authority to order removal of a father's name from a birth certificate in certain limited circumstances. See footnote 20 of this opinion. The amendment, however, does not apply to the present case.

ture, in enacting [those statutes] intended to give probate courts the power to order the amendment of birth records to remove accurate information."

## C

The commissioner also claims that the trial court improperly ruled that it was within the equitable powers of the Probate Court to order the commissioner to amend Michaela Lee's birth certificate. We agree with the commissioner and conclude that, in the circumstances of the present case, it was not proper for the Probate Court to exercise its equitable powers.

We have emphasized the narrow limits of probate courts' equitable powers in a long line of cases extending over more than one century. "[C]ourts of probate do not have any general equity jurisdiction." *Hall* v. *Pierson*, supra, 63 Conn. 344; see *Killen* v. *Klebanoff*, supra, 140 Conn. 118. Similar to implied powers, probate courts possess only those equitable powers as are necessary for the performance of their statutory duties. *Hall* v. *Pierson*, supra, 344. "[T]he equity which the Probate Court administers must grow out of and be inseparably connected with the matter the court is acting upon." *Killen* v. *Klebanoff*, supra, 118; see *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 160 Conn. 429; *Hewitt's Appeal from Probate*, 53 Conn. 24, 37, 1 A. 815 (1885). "The situation, therefore, in which the Probate Court may exercise equitable jurisdiction must be one which arises within the framework of a matter already before it, and wherein the application of equity is but a necessary step in the direction of the final determination of the entire matter." *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 429.

We have concluded herein; see part I B of this opinion; that the amendment of Michaela Lee's birth certificate was not necessary to the performance of any of the Probate Court's statutory duties. Additionally, the

removal of the biological father's name was not insepa-
rably connected to any of the issues properly before
the Probate Court. Although the defendant applied to
the Probate Court for both a change of name order and
deletion of the father's name from the birth certificate,
as we have concluded, no statutory provision provided
the Probate Court with jurisdiction to amend the birth
certificate. Additionally, the removal of the father's
name was not "a necessary step in the final determina-
tion" of the change of name application, the only matter
properly before the Probate Court. Accordingly, we con-
clude that the prerequisites for the Probate Court's exer-
cise of its equitable powers were not present in this
case.

## II

The commissioner also challenges the trial court's
determination that the commissioner had the authority
to amend the birth certificate. First, the commissioner
asserts that even he did not have the statutory authority
to delete the name of Michaela Lee's biological father
from her birth certificate. The commissioner also
argues that the trial court improperly considered
Michaela Lee's privacy interests in sustaining the Pro-
bate Court's order. The defendant contends, to the con-
trary, that the trial court correctly noted that, because
the birth certificate implicated Michaela Lee's constitu-
tionally protected privacy interests, the commissioner
was required to demonstrate a substantial reason for
refusing to amend her birth certificate. Although we
conclude that the commissioner has jurisdiction over
the amendment of parental information on birth certifi-
cates, we agree with the commissioner that he does
not have the authority to amend birth certificates unless
the parental information contains an error or omission.
We also conclude that the presence of her father's name
on Michaela Lee's birth certificate does not implicate
a constitutional right to privacy. Accordingly, we

reverse the judgment of the trial court ordering the commissioner to amend Michaela Lee's birth certificate.

## A

The trial court concluded that, pursuant to §§ 19a-41 and 19a-42 (e), the commissioner had the authority to obey the order of the Probate Court and amend Michaela Lee's birth certificate. The commissioner claims that, pursuant to §§ 7-42 and 19a-42, he may amend parental information contained on birth certificates only when there is an error or omission in the information. We agree.

The issue of whether the commissioner had the authority to follow the directive of the Probate Court is a question of statutory interpretation. Accordingly, we are guided by the aforementioned principles of statutory construction.

Whether the commissioner had the authority to amend the birth certificate raises the distinction between the commissioner's jurisdiction over the amendment of birth certificates and his authority to act in the specific manner requested. "Want of jurisdiction is one thing, and an erroneous exercise of an admitted jurisdiction is quite another; although the line that separates the one from the other is not always a plain one." *Terry's Appeal from Probate*, 67 Conn. 181, 185, 34 A. 1032 (1896). Additionally, "an administrative body must act strictly within its statutory authority . . . . It cannot modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant it that power." (Citation omitted.) *Waterbury* v. *Commission on Human Rights & Opportunities*, 160 Conn. 226, 230, 278 A.2d 771 (1971).

Section 19a-41, relied on by the trial court, provides the commissioner with general jurisdiction over the amendment of vital records and directs him to adopt

regulations to carry out this duty. Section 19a-42 (e), also relied on by the trial court, directs the commissioner to hold hearings if he has cause to doubt the validity or accuracy of information submitted in support of an amendment. As previously discussed, §§ 7-50 and 19a-42 (c) permit the department or the commissioner to amend a birth certificate upon the establishment of paternity. Additionally, § 19a-42 (d) directs the department to amend a birth certificate to show a new name upon receipt of a change of name order from a court of competent jurisdiction.

The commissioner's jurisdiction over the subject area of amendments to birth certificates is not unlimited, however, and must be exercised within the parameters of the relevant statutory provisions. See *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999) (" '[t]he power of the [commissioner] to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute' "). Accordingly, although the commissioner has the general jurisdiction to amend birth certificates, he retains the authority to amend only in the specific manner permitted by statute. In the present case, the amendment of Michaela Lee's birth certificate to remove her father's name exceeds the commissioner's express authority.

General Statutes (Rev. to 1995) § 19a-42 (a) limits the commissioner's authority to amend vital records by providing that "a certificate . . . may be amended only in accordance with sections 19a-41 to 19a-45, inclusive, chapter 93 and regulations adopted by the [commissioner] pursuant to chapter 54. . . ." None of the statutory provisions cited in this subsection permits the commissioner to amend parental information on birth certificates in the manner requested in the present case. Section 7-42 further restricts the commissioner's

authority to amend birth certificates. That provision specifically limits amendments of parental information to the correction of "errors or omissions concerned with questions of parentage . . . as provided in section 19a-42 . . . ." General Statutes (Rev. to 1995) § 7-42. Thus, under § 7-42, the authority of the commissioner to amend parental information on birth certificates is expressly limited. In the present case, there is no suggestion that the father's name on Michaela Lee's birth certificate was inaccurate. Accordingly, the commissioner did not have the authority to amend the birth certificate to delete the father's name.

We conclude that the commissioner had jurisdiction over the matter of the amendment of Michaela Lee's birth certificate but did not have the authority to take the requested action. See *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 164, 740 A.2d 796 (1999) (distinguishing between jurisdiction and authority to act); *Smith* v. *Smith*, 249 Conn. 265, 267–68 n.4, 752 A.2d 1023 (1999); *Amodio* v. *Amodio*, supra, 247 Conn. 728–29.

B

The defendant relies primarily on *Darnell* v. *Lloyd*, supra, 395 F. Sup. 1210, in arguing that, because Michaela Lee's privacy interests are implicated, the commissioner must demonstrate a substantial state interest in not deleting the biological father's name from the birth certificate. In *Darnell*, the United States District Court concluded that the commissioner's refusal to change the sex recorded on the plaintiff's birth certificate from male to female in order to reflect her sex reassignment surgery, potentially implicated the plaintiff's rights to marriage, travel and privacy. Id., 1214. The court concluded, therefore, that the commissioner, in refusing to amend the birth certificate, was required to show a substantial state interest sufficient to over-

come the plaintiff's privacy interests.[26] Id. While not specifically reaching the defendant's constitutional claim,[27] the trial court in the present case also noted that the state's control over birth certificates implicated Michaela Lee's reputational and privacy interests and the defendant's fundamental right to care, manage and control her child.

The commissioner argues that Michaela Lee's privacy interests are not implicated by the continued presence of her father's name on her birth certificate. The commissioner explains that there is no constitutional right to the nondisclosure of personal information. Additionally, the commissioner claims that, even if Michaela Lee's privacy interests are implicated, he has demonstrated a substantial state interest, namely, the accuracy and integrity of vital records—sufficient to overcome the defendant's constitutional claim. We agree with the commissioner that his refusal to amend the birth certificate did not violate Michaela Lee's privacy interests.

"While there is no right of privacy found in any specific guarantee of the Constitution, the [United States Supreme] Court has recognized that zones of privacy may be created by more specific constitutional guarantees and thereby impose limits upon government power." (Internal quotation marks omitted.) *Falco* v. *Institute of Living*, 50 Conn. App. 654, 662, 718 A.2d 1009, cert. granted, 247 Conn. 948, 723 A.2d 324 (1998). "[T]he [court] has recognized a right to privacy in the penumbra of the Bill of Rights, specifically in the protec-

---

[26] It is important to note that the court in *Darnell* issued its decision in the context of a motion for summary judgment. It denied the state's motion for summary judgment, finding that the plaintiff's complaint stated a cause of action, but did not render a final judgment in favor of the plaintiff. *Darnell* v. *Lloyd*, supra, 395 F. Sup. 1214.

[27] The trial court in this case concluded that, because it had determined that the Probate Court had the statutory jurisdiction to amend the birth certificate, it was not necessary to address the defendant's constitutional claims.

tions of the first, third, fourth and fifth amendments. *Griswold* v. *Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). . . . Justice Brandeis has referred to this right as the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. *Olmstead* v. *United States*, 277 U.S. 438, 478, 48 S. Ct. 564, 72 L. Ed. 944 (1928) (Brandeis, J., dissenting). Although the court has . . . construed this right to privacy narrowly; *Bowers* v. *Hardwick*, 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed. 2d 140, reh. denied, 478 U.S. 1039, 107 S. Ct. 29, 92 L. Ed. 2d 779 (1986); it has held that personal rights that are implicit in the concept of ordered liberty . . . or deeply rooted in this Nation's history and tradition are included in this guarantee of personal privacy. [Id.], 192, quoting *Moore* v. *East Cleveland*, 431 U.S. 494, 503, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977)." (Citations omitted; internal quotation marks omitted.) *McConnell* v. *Beverly Enterprises-Connecticut*, 209 Conn. 692, 699–700, 553 A.2d 596 (1989).

"[Aside from the unreasonable search and seizure privacy cases, the] other right of privacy cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. . . . The activities detailed as being within this definition . . . [include] matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct. . . . *Paul* v. *Davis*, 424 U.S. 693, 712–13, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). [T]he Supreme Court has extended their protection only to the most basic personal decisions. . . . Nor has the Supreme Court been quick to expand these rights to new fields. . . . *East Hartford Education Assn.* v. *Board of Education*, 562 F.2d 838, 861 (2d Cir. 1977)." (Citations omitted; internal quotation marks omitted.) *Falco* v. *Institute of Living*, supra, 50 Conn. App. 662–63

(no constitutional right to privacy in name, address and social security number of patient who allegedly assaulted another patient).

Consistent with the preceding authority, we recognize that a right to privacy exists in certain circumstances. We conclude, however, that parental information on a birth certificate does not fall within one of the limited categories that the United States Supreme Court has determined implicates a fundamental right to privacy. Although the parental information on Michaela Lee's birth certificate appears to raise an issue within the protected privacy area of family relationships, the information listed on the birth certificate does not impact the most basic personal decisions such as contraception, marriage or the decision to procreate, which the court has deemed within the constitutionally protected sphere of privacy. There is no suggestion here that the state has interfered with the relationship between the defendant and her daughter. Rather, the defendant simply alleges that the publication of family information on the birth certificate implicates the right to privacy.[28] Thus, "[t]he [defendant's] conception of privacy which [she] seeks to protect bears no analogy to those spheres of privacy which have previously won constitutional protection." *Felber* v. *Foote*, 321 F. Sup. 85, 88 (D. Conn. 1970) (no constitutional right to privacy in physician-patient relationship). Accordingly, the commissioner is not required to demonstrate a substantial reason for not amending the birth certificate.

We also note that, even if Michaela Lee had a constitutional right to privacy in the parental information con-

---

[28] We also note that the Supreme Court has upheld record keeping by state and local governments in a variety of contexts. See, e.g., *Whalen* v. *Roe*, 429 U.S. 589, 603–604, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977) (upholding centralized record keeping of persons who received prescriptions for certain drugs); *Planned Parenthood of Central Missouri* v. *Danforth*, 428 U.S. 52, 80–81, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976) (approving of record keeping in abortion context).

tained in her birth certificate, there is no showing here that the state violated that right by impermissibly disclosing that information. The defendant, not the state, provided the birth certificate as part of Michaela Lee's application to various schools. The state in no way forced the defendant to make this information public or published the information without her permission.[29] Although we recognize the difficult situation the defendant and Michaela Lee have encountered in applying for admission to private schools and acknowledge the embarrassment the father's name on the birth certificate may have caused them, the state has not created the situation. Additionally, pursuant to General Statutes (Rev. to 1995) § 7-55; see footnote 3 of this opinion; a short form birth certificate, which does not contain parental information, has the same legal effect as a long form certificate. As the commissioner acknowledged at oral argument, because pursuant to § 7-55 a short form certificate has the "same force and effect" as a long

[29] Birth certificates are protected from general public disclosure pursuant to General Statutes § 7-51. According to § 7-51, only certain individuals, such as the local director of health, the individual listed on the birth certificate or title examiners, may examine birth certificates in the custody of the department or a registrar of vital statistics.

At the relevant time of the proceedings in the present case, General Statutes (Rev. to 1995) § 7-51 provided: "Examination of birth certificates and records restricted. With the exception of the chief executive officer of the municipality or his authorized agent, the local director of health, attorneys at law, title examiners and members of legally incorporated genealogical societies, no person, except the person whose birth is recorded, if over eighteen years of age, his parent or guardian if a minor, shall have any access to or be permitted to examine the original or any copy of the birth certificate or birth record, of any person, nor shall he disclose any matters contained therein or any information concerning such birth, which original, copy or information is in the custody of any registrar of vital statistics or of the department of public health and addiction services, nor shall he be entitled to any copy of any such certificate, record or information, except upon written order of a court of record or upon written request of a state department or the federal government when approved by the department of public health and addiction services."

form certificate, provision of a short form certificate should be sufficient for school application purposes.[30]

Finally, we conclude that the holding in *Darnell* does not control our decision in this case. The court in *Darnell* interpreted Connecticut law regarding the powers of probate courts. Although an interpretation of our state statutes by a federal court may be persuasive authority, it, of course, is not binding on this court. See *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 212, 603 A.2d 385 (1992); *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 301, 305, 472 A.2d 316 (1984); *Mullen* v. *Horton*, 46 Conn. App. 759, 770, 700 A.2d 1377 (1997); *Quimby* v. *Kimberly Clark Corp.*, 28 Conn. App. 660, 672, 613 A.2d 838 (1992).

Furthermore, *Darnell* is distinguishable from the present case. In *Darnell*, the court found that the presence of the plaintiff's sex on her birth certificate potentially prevented her from obtaining a license or passport and may have barred her from marrying.[31] *Darnell* v. *Lloyd*, supra, 395 F. Sup. 1214. Although we acknowledge that the presence of her biological father's name

---

[30] Although there was no violation of Michaela Lee's constitutional right to privacy by the state in this case, it is useful to acknowledge also the significance of the need to maintain accurate vital records. As we previously have explained; see footnote 21 of this opinion; the data contained in vital records is used for a variety of important purposes, including governmental purposes. For example, the state uses parental information listed on birth certificates as part of its enforcement of child support obligations. See General Statutes (Rev. to 1995) § 19a-42 (c) (1). Additionally, vital records data assists the state in planning a number of public health programs. Accurate and consistent information is essential to these functions. The state, therefore, has a substantial interest in limiting alterations and amendments that potentially may jeopardize the accuracy of the records.

[31] In *Darnell*, subsequent to the District Court's denial of the commissioner's motion for summary judgment, the parties settled the case. Pursuant to the settlement, the department entered a notation on the back of the plaintiff's birth certificate, indicating that the gender designation had changed. The plaintiff's original gender designation was not altered and remained on the certificate.

on the birth certificate may have caused Michaela Lee and the defendant embarrassment, the presence of the name will not prevent Michaela Lee from engaging in the fundamental activities that were implicated in *Darnell*. Additionally, unlike parental information, gender is listed on both the long and short form versions of birth certificates. See footnote 3 of this opinion. While Michaela Lee has the option of producing a short form birth certificate to avoid disclosing her parental information, the plaintiff in *Darnell* had no such choice.[32]

### III

The defendant also submits three alternate grounds for affirming the decision of the trial court. She argues that we should uphold the decision of the trial court because: (1) the commissioner is estopped from denying jurisdiction because the department directed the defendant to the Probate Court for relief; (2) the commissioner's appeal from the judgment of the Probate Court was not timely; and (3) the commissioner improperly served the defendant with notice of his motion for appeal. We reject the defendant's alternate grounds for affirmance.

Testimony at the March 12, 1992 Probate Court hearing and before the trial court established that two employees of the department of vital statistics directed the defendant to obtain a decree from the Probate Court ordering the removal of the father's name from Michaela Lee's birth certificate. The defendant claims that,

---

[32] Because we have concluded herein that neither the Probate Court nor the commissioner had the authority to order an amendment of Michaela Lee's birth certificate, we need not address the commissioner's final argument that the trial court's conclusion that the commissioner had authority to amend the birth certificate was incorrect, because the amendment of Michaela Lee's birth certificate would jeopardize the accuracy and integrity of the vital records statutes. We have acknowledged the importance of the vital records statutes and the state's interests in maintaining the accuracy of those records, and we reiterate that conclusion here.

because the department induced the defendant to seek relief in the Probate Court, the commissioner should now be estopped from denying that the Probate Court had jurisdiction to issue the order. We conclude that the requirements for estoppel against a government agency are not present here.

"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge. . . . In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987). Finally, a claim for promissory estoppel will not lie against the state unless the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents. Id." (Citations omitted; internal quotation marks omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 268–69, 690 A.2d 368 (1997); see also *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 353, 365 A.2d 1093 (1976).

The defendant has not offered any proof that the department employees were empowered to bind the commissioner and the department. See *Chotkowski* v.

*State*, supra, 240 Conn. 269. Additionally, the defendant has shown no special circumstances that make it highly inequitable or oppressive to estop the commissioner from denying jurisdiction. The defendant simply makes the blanket assertion that, because she followed the advice of those department employees, the commissioner is now subject to estoppel. Finally, the defendant has not demonstrated that she or Michaela Lee will be subject to substantial loss if the commissioner is permitted to negate the acts of his employees. Rather, the father's name will remain on the birth certificate and Michaela Lee's position will be unchanged from the time the defendant sought the advice of the department employees. Accordingly, because the defendant has not demonstrated that the requirements for estoppel against a government agency exist in the present case, we reject the alternate ground for affirmance.

The defendant also asserts that the commissioner's appeal from the decision of the Probate Court was not filed within the time limits prescribed by § 45a-187 (a). See footnote 8 of this opinion. The defendant argues that the commissioner had thirty days from the Probate Court's denial of his motion for reconsideration on July 12, 1996, in which to appeal to the trial court. The commissioner argues in response that, because he did not have notice of the March 6, 1996 hearing before the Probate Court, pursuant to § 45a-187 (a), he had twelve months from the March 12, 1996 Probate Court order to file the appeal.

The defendant raised an identical claim before the trial court in a motion to dismiss the commissioner's appeal. The trial court, *O'Keefe, J.*, concluded that § 45a-187 permits appeals from probate "to be taken within twelve months if the aggrieved person had no notice to be present and was not present." In denying the defendant's motion, the trial court concluded that, because the plaintiff did not have notice of the hearing,

the appeal filed on October 15, 1996, within twelve months of the Probate Court order, was timely. We see no reason to depart from the judgment of the trial court and, accordingly, reject the defendant's alternate ground for affirmance.

Finally, the defendant argues that the commissioner's motion to appeal from the judgment of the Probate Court had been served and returned to court improperly because it had not been served twelve days prior to the return date as required by General Statutes §§ 52-46 and 52-46a.[33] The trial court, *O'Keefe, J.*, rejected an identical claim by the defendant in denying her motion to dismiss the commissioner's appeal. The trial court concluded that, although notice had not been served in compliance with §§ 52-46 and 52-46a, the error in the return date was attributable to the Probate Court, not the commissioner. The trial court, citing *Donovan's Appeal from Probate*, 40 Conn. 154, 156 (1873), denied the defendant's motion, therefore, because "[a]n appeal from probate is an absolute right of an aggrieved person which cannot be deprived by any omission of Probate Court."

We agree with the trial court that the commissioner's failure to comply with §§ 52-46 and 52-46a was not fatal to his appeal. Pursuant to General Statutes § 45a-192,[34]

---

[33] General Statutes § 52-46 provides: "Time for service. Civil process, if returnable to the Supreme Court, shall be served at least thirty days, inclusive, before the day of the sitting of the court, and, if returnable to the Superior Court, at least twelve days, inclusive, before such day."

General Statutes § 52-46a provides: "Return of process. Process in civil actions returnable to the Supreme Court shall be returned to its clerk at least twenty days before the return day and, if returnable to the Superior Court, except process in summary process actions and petitions for paternity and support, to the clerk of such court at least six days before the return day."

[34] General Statutes § 45a-192 provides: "Order of notice. The Court of Probate, in allowing an appeal, shall make such order of notice to persons interested as it deems reasonable. When the notice has been given by the appellant and proved to the court to which the appeal is taken, the court may hear the appeal without further notice."

it is the duty of probate courts to make process returnable on a proper return date. Although the Probate Court specified a return date that was not in compliance with §§ 52-46 and 52-46a, that omission did not deprive the trial court of jurisdiction over the commissioner's appeal. "The provision requiring notice is a separate section . . . from that giving a right of appeal; it relates to the duties of the Court of Probate and not of the appellant; it is merely directory; when the appeal is properly taken and allowed, the jurisdiction of the Superior Court over the cause attaches . . . ." *Coughlan* v. *Murphy*, 134 Conn. 601, 604, 59 A.2d 729 (1948). Section 45a-192 "would serve no purpose if the appeal must be served in the same manner as ordinary civil process." Id. Accordingly, we reject the defendant's claim.

The judgment is reversed and the case is remanded with direction to render judgment for the commissioner.

In this opinion BORDEN, NORCOTT, PALMER, SULLIVAN and VERTEFEUILLE, Js., concurred.

MCDONALD, C. J., dissenting in part and concurring in the result. The majority agrees with the commissioner's claim that Michaela Lee has no constitutional right to the nondisclosure of personal information contained on a birth certificate. It suggests that privacy interests are limited to only "the most basic personal decisions such as contraception, marriage or the decision to procreate," and holds that this category does not include Michaela Lee's privacy interest in her birth records. I disagree. I do not believe that we need to decide in this case that Michaela Lee has no constitutional privacy interest in the parental information contained in the state's birth records. Instead, I would hold that she may have such an interest, but the record in this case does not show that it was violated.

The United States Supreme Court has recognized that there may be a constitutional privacy interest in public records containing sensitive personal information, and that that privacy interest should be protected by statutory confidentiality requirements. In *Whalen* v. *Roe*, 429 U.S. 589, 591, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977), the United States Supreme Court considered the constitutionality of the New York State Controlled Substances Act of 1972; N.Y. Pub. Health Law § 3300 et seq. (McKinney Sup. 1976-1977); which required the recording, in a centralized computer file, of the names and addresses of all persons who had obtained certain drugs pursuant to a doctor's prescription. The court wrote, "[t]he cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions. . . . The mere existence in readily available form of the information about patients' use of Schedule II drugs creates a genuine concern that the information will become publicly known and that it will adversely affect their reputations." *Whalen* v. *Roe*, supra, 598–600. "We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files. . . . The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures. Recognizing that in some circumstances that duty arguably has its roots in the Constitution, nevertheless New York's statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the individual's interest in privacy. We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumu-

lated private data—whether intentional or unintentional—or by a system that did not contain comparable security provisions. We simply hold that this record does not establish an invasion of any right or liberty protected by the Fourteenth Amendment." Id., 605–606; see also id., 607 (Brennan, J., concurring) (because recordkeeping scheme contains numerous safeguards of confidentiality, it does not amount to deprivation of constitutionally protected privacy interest, and, therefore, state need not show that challenged statute is absolutely necessary to accomplish legitimate goal); *Planned Parenthood of Central Missouri* v. *Danforth*, 428 U.S. 52, 79–80, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976) (considering state's recordkeeping requirements for health facilities and physicians concerned with abortion and holding that recordkeeping requirements that respect patient's confidentiality are permissible).

Relying on these cases, I would hold that Michaela Lee may have a constitutional privacy interest in her birth records, which reveal, among other things, the identity of her birth parents.[1] As the facts of this case show, there may be very good reasons, which the state should respect, that a person does not wish the information in those records to be made public.[2] Even if it

---

[1] Although Michaela Lee may have a privacy interest in her birth records that requires the state to take steps to maintain their confidentiality, I do not believe that Michaela Lee's interest can be extended to include a right to alter confidential records to delete information that she finds embarrassing.

[2] In *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 170–71, 635 A.2d 783 (1993), this court looked to tort law to construe the phrase "invasion of personal privacy" for purposes of defining the scope of that exception to the Freedom of Information Act. General Statutes (Rev. to 1993) § 1-19 (b) (2), now General Statutes § 1-210 (b) (2). We held that the exception applied "when the information sought . . . does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person." *Perkins* v. *Freedom of Information Commission*, supra, 175. Tort law might also be the starting point for the development of a constitutional standard.

Because, however, as stated elsewhere in this dissenting opinion, there was no disclosure of any information by the state in this case, there is no need to decide whether disclosure of birth records could, in some circum-

is assumed, however, that Michaela Lee has such a constitutional right, I do not believe that that right has been infringed in this case. First, I note that the state has a substantial interest in maintaining the accuracy and integrity of birth records. The value of accurate and detailed genealogical records has been recognized since time immemorial. See, e.g., 1 Chronicles 1:1–9:44 (commonly known as "the begats"). The United States Supreme Court cases suggest, however, that, even when the state has a vital interest in keeping records containing sensitive personal information, it must take steps to protect the confidentiality of those records. The statutes governing the maintenance of birth records in Connecticut do provide such protection.[3] Furthermore, as the majority has noted, the state has done nothing to publicize the information on Michaela Lee's birth certificate. Rather, the defendant herself voluntarily provided the birth certificate to third parties.

In summary, I would hold that Michaela Lee may have a constitutional privacy interest in the information contained in her birth records, but that the state has a countervailing interest in maintaining complete and accurate records. Furthermore, I would find that any such interest that Michaela Lee may have is adequately protected under Connecticut's statutory recordkeeping scheme. Accordingly, I dissent in part and concur in the result.

---

stances, be "highly offensive to a reasonable person"; id.; or could constitute an invasion of personal privacy in a constitutional sense. Nevertheless, I do not see any need to rule out such a possibility.

[3] As noted in footnote 29 of the majority opinion, birth certificates are protected from general public disclosure pursuant to General Statutes § 7-51. See footnote 29 of the majority opinion for the text of that statute.